459 A.2d 772

**Floyd S. HENRY and Carol L. Henry, His Wife, Appellants,**

**v.**

**FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF GREENE COUNTY**

**v.**

**Charles W. RHODES, Individually and T/D/B/A Wayne Industrialized Building Company.**

Superior Court of Pennsylvania.

Argued May 19, 1982.

Filed April 15, 1983.

Stephen Paul McCloskey, Washington, for appellants.
Louis M. Tarasi, Jr., Pittsburgh, for appellees.

Before HESTER, McEWEN and JOHNSON, JJ.

JOHNSON, Judge:

Appellants, Floyd and Carol Henry, appeal from an order granting summary judgment pursuant to Pa.R.Civ.P. 1035 in favor of appellee, First Federal Savings & Loan Association of Greene County.

When reviewing a motion for summary judgment, we adhere to the following guidelines:

[W]e are to accept as true all well-pleaded facts in the non-moving parties' pleadings, as well as the admission on the file, giving to them the benefit of all reasonable inferences to be drawn therefrom; the record must be examined in the light most favorable to them; and in passing upon a motion for summary judgment, it is no

part of our function to decide issues of fact but solely to determine whether there is an issue of fact to be tried and all doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for summary judgment.

*Kotwasinski v. Rasner,* 436 Pa. 32, 258 A.2d 865 (1969). We note additionally that the moving party bears the burden of establishing the absence of genuine issues as to material facts. *Lehigh Electric Products Company, Inc. v. Pennsylvania National Mutual Casualty Insurance Co.,* 257 Pa.Super. 198, 390 A.2d 781 (1978). Mindful of these guidelines, we now affirm the order granting summary judgment.

Appellants filed a complaint against appellee alleging causes of action for breach of contract and implied warranty in assumpsit, and causes of action for negligence and gross negligence and malfeasance in trespass.[1] From appellants' pleadings and the three depositions of record, we adduce the following facts.

Appellants contracted with Charles W. Rhodes to have a dwelling built upon property they purchased near Smithfield, Pennsylvania. To finance the construction, they entered into a construction loan agreement with appellee through its employee Scott O'Neil. The agreement provided for five progress payments upon completion of specified construction work. As the construction progressed, approximately six inspections of the property were conducted by Mr. O'Neil. These inspections simply consisted of Mr. O'Neil ascertaining whether the construction had progressed to the point where various items listed on his progress report did indeed exist. None of the inspections were conducted to determine the quality of the workmanship done.

The periodic progress payments provided for under the construction loan agreement were accomplished by a check

---

1. Later, appellee joined Charles W. Rhodes as an additional defendant. Mr. Rhodes did not participate in this appeal, but joins in the arguments of appellee.

drawn in the name of both the appellants and Mr. Rhodes. Most of the checks were disbursed directly to appellants, and not to the contractor (Mr. Rhodes) as was appellee's right under the agreement. They were disbursed after appellee had determined by means of inspection of the quantity of the work done, that the progress payment was due.

Acting upon the assumption that appellee had done a quality inspection, appellants perfunctorily endorsed the checks, allowing them to be cashed by Mr. Rhodes by affixing his signature. Appellants did not have an inspection to determine the quality of the work done until after their house was completed. It then became apparent that there were numerous deficiencies in the construction work. Appellants first sought recompense for these deficiencies from Mr. Rhodes by filing a separate action. They obtained a judgment against him, which remains unsatisfied. Thereafter, they filed the action now before this court.

▪ ■ We will first consider whether appellants' claims are ones upon which relief may be granted. It is axiomatic that in order to state a cause of action for negligence, appellants must have been owed some duty by appellee to conduct quality inspections for their benefit. *See Boyce v. U.S. Steel Corp.*, 446 Pa. 226, 285 A.2d 459 (1971). Since gross negligence is simply a greater degree of negligence, it must also be predicated upon some duty owed to appellant by appellee. For purposes of the assumpsit counts appellants must have been the beneficiaries of some contractual duty. Unless appellants have stated a claim upon which relief can be granted, we need not consider appellants' allegations as to the invalidity of the exculpatory language in the construction loan agreement. Nor do we need consider appellee's affirmative defenses of statute of limitations, collateral estoppel, and contributory negligence.

The central issue herein for our determination is whether appellee was under a duty to inspect the construction work for quality of the workmanship as well as quantity of work before disbursing the construction loan funds. We begin

our analysis by determining whether appellants' counts in trespass are actionable because appellee owed appellants a legal duty.

■ In *Federal Land Bank of Baltimore v. Fetner*, 269 Pa.Super. 455, 410 A.2d 344 (1979), Fetner filed counterclaims averring that the bank fraudulently withheld from him knowledge of the fact that an easement burdened the property he purchased. Fetner contended that the bank had an affirmative duty to inform him that an easement burdened his property. Citing *Grace et ux. v. Moll*, 285 Pa. 353, 355, 132 A. 171, 171 (1926), a panel of this court stated that "[o]rdinarily, the relationship between borrower and lender does not create a confidential relationship." It was further stated that:

> Ordinarily, there is no duty on the part of a lender to inspect the mortgaged property to determine that the borrower is obtaining that which he may have been promised by the vendor or that which he believes he is obtaining. Unless some further obligation is assumed, the lender's inspection of the premises to be mortgaged is made only to ascertain whether the property has sufficient value to secure the loan and is made by the lender for its benefit only.

*Fetner, supra*, 269 Pa.Super. at 462, 410 A.2d at 348. Finding that the bank had in no way assumed such a duty, the panel affirmed the dismissal of Fetner's counterclaim. Thus, the general rule, as enunciated by the *Fetner* court, is that ordinarily the law does not impose a duty upon the mortgagee/lender to inspect the mortgaged property for the benefit of the mortgagor/borrower,[2] unless the mortgagee/lender has otherwise assumed such a duty.

2. Appellants cite *McHale v. Antonio*, 71 Luz.L.Reg.Rep. 54 (C.P. Luzerne County 1981) and *Garbish v. Malvern Federal Savings and Loan Association*, 17 Pa.D. & C.3d 202 (C.P. Chester County 1980) in support of their position that such a duty exists. Appellants' reliance upon the holdings in these cases is misplaced. Both of these cases are distinguishable on their facts from the instant case. In both cases, the Bank exercised absolute control over the disbursements permitting the borrower no discretion whatsoever to control the disbursal of

In their brief, appellants maintain that appellee contractually assumed a duty to inspect for their benefit. Underlying their argument is the assertion that the construction loan agreement as supplemented by parol representations of Mr. O'Neil at the time the agreement was executed creates a contractual duty to inspect for their benefit. They further maintain that appellee negligently performed this duty.

■ At this point we note that our analysis of the validity of appellants' counts in both trespass [3] and assumpsit will depend upon what obligations are imposed on appellee by the construction loan agreement. We therefore, must interpret it to determine the extent of appellee's obligations.

■ The interpretation of the construction loan agreement is a question of law for the court. While it is the court's province to interpret the agreement, it is still inappropriate to enter a summary judgment if there are substantial disputes as to the facts regarding the interpretation or application of its terms. *Murray v. Yoe*, 170 Pa.Super. 348, 85 A.2d 623 (1952). However, if the terms of the construction loan agreement are clear and unambiguous, we believe that summary judgment is appropriate if the court

funds to the contractors. In the instant case the borrowers did in fact have control over the disbursement of funds to the contractor. Since these two cases are distinguishable from the instant case, we need not, indeed we do not, here express an opinion as to the validity of the holdings in them.

**3.** The assumption of a tort duty, when otherwise no duty exists, is governed by the Restatement (Second) of Torts § 323 (1965). *See Hamil v. Bashline*, 224 Pa.Super. 407, 307 A.2d 57 (1973), appeal after remand 243 Pa.Super. 227, 364 A.2d 1366 (1976), vacated 481 Pa. 256, 392 A.2d 1280 (1978). It states in pertinent part that: "one who undertakes ... for consideration to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking...." The assumption of a duty must be evidenced by "some contractual or legal obligation." *DeJesus v. Liberty Mutual Insurance Co.*, 423 Pa. 198, 223 A.2d 849 (1966). Thus, appellants' counts in trespass are not actionable unless appellee contractually undertook to make quality inspections for their benefit.

is able to apply those terms to the facts of the case because of the absence of substantial factual disputes.

■ We begin the task of interpreting the construction loan agreement by examining its terms. From our examination of the agreement, it is apparent that the agreement imposes few obligations upon appellee, while vesting appellee with various other rights. As to appellee's obligation to inspect, we focus our attention on paragraphs 9 and 16. Paragraph 9 [4] gave appellee the right to enter the premises and conduct inspections "for its own protection" and not as agent for the appellants. Both paragraphs 9 and 16 [5] stipulate that appellee assumes "no responsibility for the completion of said building ... according to the plans and specifications..." Thus the plain and unambiguous language of the construction loan agreement clearly negates the existence of the duty appellants assert.

■ Appellants assert that oral representations contrary to the terms of the agreement were made by Mr. O'Neil prior to its execution. Appellee disputes that these representations were made. This, in appellants' view, raises a "genuine issue of material fact." We disagree because we believe the representations alleged are barred by the parol evidence rule.

4. Paragraph 9 of the construction loan agreement states:
The Borrower and the Contractor do hereby authorize the inspectors or representatives of the Association to enter upon the said premises and inspect and check the construction of the improvements at all reasonable times. *It is understood and agreed that the Association, in making inspections and disbursing funds, is doing so only for its own protection and is not acting as agent for either of the parties hereto. The Association assumes no responsibility for the completion of said improvements either in accordance with the plans and specifications* or for the contract price, nor shall it be liable for any acts other than gross negligence of malfeasance in the disbursement of the construction funds. (Emphasis added.)

5. In pertinent part Paragraph 16 states:
That the owner has accepted, and hereby excepts the sole responsibility for the selection of his own contractor and subcontractors, all materials, supplies and equipment to be used in the construction, and *the Association assumes no responsibility for the completion of said building, according to the plans and specifications and for the contract price....* (Emphasis added)

In *Clancy v. Recker,* 455 Pa. 452, 458 n. 5, 316 A.2d 898, 902 n. 5 (1974), the court stated the parol evidence rule as follows:

> In the absence of fraud, accident or mistake, parol evidence as to preliminary negotiations or oral agreements and as to a prior or contemporaneous oral promise or representation or agreement is not admissable in evidence if it adds to or modifies or contradicts or conflicts with a written agreement which purportedly *contains the entire agreement between the parties.*

Thus, the parol evidence rule would bar the admission of the oral representations alleged by appellants if we determine the construction loan agreement is the complete agreement between the parties.

For guidance, we look to the landmark case of *Gianni v. Russell & Co.,* 281 Pa. 320, 126 A. 791 (1924). In *Gianni,* the supreme court stated that "[w]here the parties ... have deliberately put their agreement in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement." Also, the following approach for determining the completeness of a writing was advanced:

> [T]he writing will be looked at, and if it appears to be a contract complete within itself, "couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the engagement", it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, were reduced to writing.

*Id.,* 281 Pa. at 323–24, 126 A. at 792. (Citation omitted). It was further stated in *Gianni* that "where the cause of action rests entirely on an alleged oral understanding concerning a subject which is dealt with in a written contract it is presumed that the writing was intended to set forth the entire agreement as to that particular subject." *Id.* Since the construction loan agreement does not contain an integration clause that recites that the parties have set forth their entire agreement, we must examine its text to determine its completeness.

As we have indicated in our discussion *supra,* the construction loan agreement contains provisions that clearly address the matters of inspection of the property and for whose benefit that inspection will be conducted. Thus, we deem it to be complete as to those matters.

Finding the construction loan agreement to be complete as to matters regarding inspection, evidence of the parol representations of Mr. O'Neil is barred unless appellants allege and prove fraud, accident or mistake by clear and convincing evidence. Appellants have not alleged fraud, accident, or mistake in their complaint and reply to new matter, nor is it established by any facts of record. We therefore conclude that the parol representations asserted by appellants are not admissible to contradict the terms of the construction loan agreement.

In summary, we conclude that no duty was imposed upon appellee by law or contract, to inspect the mortgaged premises for the quality of the construction work performed before disbursing funds from the construction loan fund. We hold that appellants have failed to state causes of action upon which relief may be granted because the parol evidence rule bars the only proof that would permit appellants' complaint to be actionable. In such cases, it has been held that summary judgment is an appropriate disposition. *Rose v. Food Fair Stores, Inc.,* 437 Pa. 117, 262 A.2d 851 (1970).

Because of our holding, we need not consider appellants' argument that genuine issues of material fact exist relative to the validity of the exculpatory clauses in the construction loan agreement. While it has been held that genuine issues of material fact arise when the validity of exculpatory clauses is disputed, *see Leidy v. Deseret Enterprises, Inc.,* 252 Pa.Super. 162, 381 A.2d 164 (1977), we find no underlying cause of action that would invoke the exculpatory clause. Similarly, we need not consider appellee's affirmative defenses.

Finding that appellee is entitled to judgment as a matter of law and that no triable issues of fact exist, we therefore

affirm the order granting summary judgment in favor of appellee.