## In re WORLDCLASS PROCESSING, INC., Debtor.

**Worldclass Processing, Inc., Plaintiff,**

**v.**

**AT & T Capital Corporation, AT & T Commercial Finance Corporation, Newcourt Financial Corporation, and CIT Corporation [1], Defendants.**

**Bankruptcy No. 98–29986–JKF.**
**Adversary No. 00–2672–JKF.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Feb. 10, 2005.

---

1. According to Defendant's Opposition to Plaintiff's Motion for Summary Judgment ..., Adv. Dkt. No. 77, Defendant CIT Lending Services Corporation filed its pleadings "on behalf of the successor to AT & T Corporation and other defendants." *See* Defendant's Memorandum in Support of its ... Opposi-

tion to Plaintiff's Motion for ... Summary Judgment, Adv. Dkt. No. 79. CIT was formerly known as Newcourt Commercial Finance Corporation and AT & T Commercial Finance Corporation. *Id.* at 1. We refer to "CIT" in lieu of "Defendants".

Robert O. Lampl, Pittsburgh, PA, for Plaintiff.

George E. Yokitis, Koppers Building 30th Floor, Pittsburgh, PA, for Defendants.

## MEMORANDUM OPINION [2]

JUDITH K. FITZGERALD,
Bankruptcy Judge.

The matters before the court are the motion for summary judgment with respect to Count VIII of the Amended Complaint filed on behalf of Debtor, Adv. Dkt. Nos. 36, 73, and CIT's motion to dismiss

---

**2.** This Memorandum Opinion constitutes the court's findings of fact and conclusions of law. The court's jurisdiction was not at issue.

the Amended Complaint. Adv. Dkt. No. 41. Defendant CIT opposes the motion for summary judgment and requests that this court grant its motion to dismiss. The parties stipulated to certain facts. Adv. Dkt. No. 71.

Count VIII of the Amended Complaint is an objection to CIT's proof of claim. The bases for the objection are that

(1) CIT acted inequitably towards the Debtor through inaction and misrepresentation so its claim should be equitably subordinated;

(2) CIT's claim is contrary to indemnification agreements it entered into with Debtor;

(3) CIT's claim for postpetition interest and indemnification are not sums certain; and

(4) CIT's claim does not reflect amounts it received under the debtor-in-possession ("DIP") facility.

Debtor's motion for summary judgment asserts that during the bankruptcy case, CIT received more payments than it was entitled. In its brief in support of its motion for summary judgment, Debtor asserts, for the first time, that the transfers, or at least some of them, were preferential under 11 U.S.C. § 547. For the reasons which follow, we deny Debtor's motion for summary judgment and grant CIT's motion to dismiss the Amended Complaint. The following facts are taken from the parties' Stipulation dated January 2, 2003, and the record. *See* Adv. Dkt. No. 71.

*Facts*

Prepetition, on or about December 17, 1993, CIT and Debtor entered into a Credit Agreement pursuant to which CIT advanced funds to Debtor and was secured by a perfected first priority security interest in substantially all of Debtor's assets [3]. Debtor filed its chapter 11 petition on December 18, 1998. On the date of the filing of the bankruptcy, Debtor's obligations to CIT exceeded $21 million which consisted of more than $17 million in principal, $863,000 in interest, at least $900,000 in indemnity claims, and $1.9 million or more that CIT asserted arose under warrants that it held.[4] At all times from the date of the Credit Agreement through the date of filing of the bankruptcy, CIT's perfected first priority security interest was maintained. On December 18, 1997, one year prepetition, Debtor owed CIT $18,645,339, which amount is exclusive of the indemnity and warrant claims. During the year before the bankruptcy was filed Debtor paid CIT $2,187,274, all of which CIT avers came from proceeds of its prepetition collateral. Of that prepetition remittance, $720,165 was applied to reduce principal and $1,466,558 was applied to interest. CIT received no payments in the 90 days prepetition.

3. Three other creditors held first position purchase money security interests in certain equipment. *See* Amended Plan of Reorganization, Bankr.Dkt. No. 203, Adv. Dkt. No. 6, Appendix in Support of Defendants' Motion to Withdraw the Reference, or to Have the Court Abstain, Exhibit K, at 19—20. Those security interests are not at issue.

4. The Court of Common Pleas of Allegheny County, James, J., entered Findings of Fact, Conclusions of Law, and Decree Nisi on April 21, 1998, in Civil Division action no. G.D. 95–18718. CIT's predecessor, AT & T, and Banc One secured stock warrants for certain prepetition loans. This transaction closed in February of 1993. When Debtor's principals violated the terms of the loan, AT & T exercised its warrants (Banc One had assigned its warrants to AT & T). The Court of Common Pleas found this act was a "proper exercise of AT & T's legitimate legal rights." Exhibit E to Appendix in Support of Defendants' Motion to Withdraw the Reference, or to Have the Court Abstain, Adv. Dkt. No. 6, at 24.

On or about February 11, 1999, this court entered a Final Order Approving Section 364 Borrowing and Granting Liens ("Financing Order") which authorized Debtor and CIT to enter into certain post-petition loan transactions. Bankr.Dkt. No. 115. Under the postpetition Financing Order, CIT lent Debtor $12,748,000.[5] Thereafter, CIT received $32,902,285.06 from Debtor which funds were generated from collection of receivables in the ordinary course of Debtors' business, the sale of its assets,[6] and/or from the liquidation of other assets that were subject to CIT's senior lien. From the postpetition remittances, CIT applied $21,096,724 to the prepetition debt. This application was consistent with the terms of the Financing Order and CIT's rights. Of that amount, $18,342,796 was applied to principal and interest accrued and unpaid as of the petition date, and $2,753,928 was applied to interest that accrued postpetition through June 30, 2000. The result was that all of Debtor's prepetition obligation to CIT was paid except for the indemnity and warrant claims. CIT applied $11,805,561 to the postpetition debt, $11,192,611 of which was applied to principal and $612,950 to interest accrued through June 30, 2002. As of January 31, 2002, $1,944,835.95 of the postpetition debt[7] remained unpaid as of January 2, 2003, the date of the Stipulation.[8]

*Debtor's Motion for Summary Judgment With Respect to Count VIII of Amended Complaint*

Debtor asserts in its motion for summary judgment that the prepetition collateral had a value of only $16,197,082 but CIT received payments on account of the prepetition indebtedness in the amount of $21,096,724. Therefore, Debtor argues that CIT was not entitled to receive payments in excess of its secured claim postpetition. Debtor asserts that it is entitled to recover $4,899,642 which is the difference between the amount CIT was paid on account of the prepetition obligation and the value of the prepetition collateral.

Debtor also asserts that CIT owes it $2,187,274 as a preference that CIT was paid by Debtor in the year prepetition because CIT was an insider. Debtor was insolvent at the time and the payments

---

**5.** With respect to CIT's prepetition claim, we note that CIT was secured in substantially all of Debtor's assets prepetition. Pursuant to the Financing Order, Bankr.Dkt. No. 115, entered February 11, 1999, CIT was granted a

> valid, perfected, enforceable, and non-avoidable, first-priority security interest in and lien upon all property of the Debtor and its Estate, including causes of action arising as of the Petition Date ... and all proceeds rents, products, or profits thereof (collectively, the "Postpetition Collateral" and, together with the Prepetition Collateral,the "Collateral"), *provided, however,* that the foregoing security interests and liens ... in assets of the Estate which are subject to [certain] pre-petition [sic], valid, perfected, enforceable and non-avoidable liens and security interests ... (the "Permitted Liens") shall be junior and subject to the Permitted Liens pursuant to Section 364(c)(3) of the Code; and *provided further,*

> *however,* that nothing herein shall be deemed to be a finding of fact or conclusion of law with respect to the enforceability or perfection of any of the Permitted Liens.

Final Order Approving Section 364 Borrowing and Granting Liens, signed February 11, 1999, Bankr.Dkt. No. 115, Adv. Dkt. No. 77, Exhibit C, at ¶ 8. The Permitted Liens are not at issue here. CIT was also granted a superpriority administrative expense with respect to the postpetition indebtedness.

**6.** The assets were sold in June of 2002 for approximately $18,207,348.

**7.** $1,555,389 was principal and $389, 447.21 was interest.

**8.** CIT also claims entitlement to reimbursement of attorneys' fees and expenses incurred postpetition and for interest accruing after January 31, 2002. As a fully secured creditor, it is entitled to these costs. *See infra.*

resulted in CIT recovering more than it would have if Debtor had liquidated under chapter 7.[9] For the reasons which follow, we find that Debtor's arguments are without merit.

CIT holds two types of claims in this case: those arising from loans and other financial accommodations provided to Debtor prepetition and those arising from the postpetition DIP loans. Debtor and CIT agreed on many aspects of CIT's claims in the January 2, 2003, Stipulation. Adv. Dkt. No. 71. CIT's prepetition claims arise from the Credit Agreement and related documents entered into on December 17, 1993. Pursuant to that Agreement, CIT's claims were secured by valid perfected first priority liens in substantially all of Debtor's assets. The parties agreed that as of the date the bankruptcy was filed, Debtor was obligated to CIT in an amount exceeding $21 million.

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c), Fed.R.Bankr.P. 7056. *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). All inferences must be drawn in favor of the nonmovant. *Iadimarco v. Runyon,* 190 F.3d 151, 164 (3d Cir.1999).[10]

The plan of reorganization, confirmed, as amended, on June 2, 2000, Bankr.Dkt. No. 420, provides that CIT[11] was to be paid in full without distinction between pre– and postpetition debt. In relevant part, the amended plan provides:

The Class 1 Claim: Any and all claims of Newcourt. Newcourt's claims arise pursuant to a Credit Agreement, dated as of December 7, 1993, as amended, the related "Loan Documents" (as defined in the Credit Agreement), as amended, and orders and agreements pursuant to which the Debtor after the Petition Date used cash collateral and obtained postpetition [sic] loans and financial accommodations. The current liquidated balance due in respect of the Debtor's loan obligations to Newcourt is estimated by Newcourt to be in excess of $20 million. Newcourt's claim are [sic] secured by liens and security interests on all of the Debtor's tangible and intangible assets, including its accounts receivable. The allowed Claim of Newcourt shall be paid from the Sale Fund. Until such time as the Debtor's assets are sold, Newcourt shall retain all of its liens and security interests in the Debtor's assets and all of its rights and entitlements under the pre-petition Loan Documents, as amended, and under its post-petition loan documents and financing order and under all related documents and agreements ("Newcourt's Liens and Rights"). Upon the closing of the Asset Sale, all of Newcourt's Liens and Rights shall continue in full force and effect; provided, however, that Newcourt's liens and security interests in the assets of the Debtor shall be divested from the assets sold and shall attach to the Sale Proceeds.

Newcourt shall, among other things, be entitled to a security interest and lien in all the Sale Proceeds senior to the

---

9. Debtor also asserted entitlement to prejudgment interest. Because we find in CIT's favor, Debtor is not entitled to interest.

10. CIT purports to have filed a cross-motion for summary judgment. However, this "cross-motion" was included in its opposition to Debtor's motion for summary judgment. Under the Local Rules of this court, a response combined with a motion is treated only as a response. *See* Local Bankr.Rule 1001–2–H.

11. In the amended plan CIT is referred to as Newcourt Commercial Finance Corporation or Newcourt. *See* Amended Plan, Bankr.Dkt. No. 203, at 8, ¶ 27.

claims, security interests and liens of WCP, LLC, and equal in priority to Newcourt's existing security interests and liens in the Debtor's assets, to secure all of Newcourt's Allowed Claims, including, without limitation, any claim of Newcourt ultimately allowed in respect of indemnification claims. Subject to the rights, if any, of parties in interest to assert unclassified claims entitled to distributions senior to Newcourt under applicable law,[12] the Allowed Claim of Newcourt shall be paid in full from the Sale Proceeds prior to any other use of the Sale Proceeds for payment of claims junior to that of Newcourt; provided, however, as a concession by Newcourt pursuant to this Plan, prior to payment of Newcourt's Claims, the Sale Proceeds may be used to pay [certain trade and professional fee claims] and Indemnity Administrative Claims to the extent arising from actions or inactions of the officers and directors of the Debtor commencing on the Petition Date and continuing until the Effective Date[13] and, as an additional concession by Newcourt pursuant to this Plan, Newcourt shall be entitled to payment on the last $500,000 of its Allowed Claim . . . ( . . . the "Subordinated Amount") only if, and when, the Allowed Claim of WCP, LLC in Class 5 . . . and unpaid priority claims are paid in full.[14] Except as set forth in the immediately preceding sentence, nothing in this Plan is intended to, or shall be [ ] construed, as a subordination of, or a consent to a § 506(c) or other charge against, Newcourt's claims, security interests, and liens, and no claim shall be paid prior to the claim of Newcourt unless such claim is determined by a Final Order to be senior to Newcourt's claims. Newcourt shall be entitled to payment of its claims in cash when Newcourt's claim is allowed by the Court or remittance to Newcourt is otherwise provided by Court order. Except with respect to the Subordinated Amount, nothing herein shall prejudice Newcourt's rights to receive payments in full of the claims asserted by it, whether or not allowed, pursuant to the Intercreditor Agreement, dated December 17, 1993 . . . . Newcourt and any assignee shall be entitled to credit bid all or a portion of its claim in connection with any Asset Sale, and such credit bid shall be treated as the highest and best bid if no higher cash offer is available . . . .

Amended Plan, Dkt. No. 203, Adv. Dkt. No. 6, Exhibit K, at 16–19, Article IV(A)(1).[15]

12. There were no successful such claims.

13. The Effective Date is defined in the amended plan as "the later of (i) the date sixty (60) days after the Sale Approval Date, and (ii) ten (10) days after the Sale Consummation Date." Amended Plan, Dkt. No. 203, at 8, ¶ 23.

14. This provision is not relevant to the issue before the court.

15. There is a limited exception in the plan to the continued enforceability of the Intercreditor Agreement by which CIT will permit WCP LLP to receive a payment after CIT has been paid all but $500,000 of its interest, principal, and fees and expenses. Defendant's Memorandum in Support of its (1) Opposition to Plaintiff's Motion for . . . Summary Judgment . . . ., at 8, n. 3, Adv. Dkt. No. 79.

The plan also provided that the Debtor was to establish a segregated interest bearing account in the amount of $500,000 to pay holders of allowed unsecured Class 6 claims. The Debtor asserts that unsecured creditors will be paid only 60 percent of their claims; CIT contends that they will be paid 100 percent. It does not matter as this class is to be paid from the $500,000 reserve carved out from the proceeds of sale. CIT holds a first priority perfected security interest with respect to all assets (except a limited few which are subject to certain Permitted Liens as defined in the plan and which are not at issue herein). Inasmuch as CIT is in first position, the unse-

It is clear from the Plan that CIT is to be paid in full without distinction between pre- and postpetition debt. Furthermore, CIT is secured in all of Debtor's assets. Debtor's financial statements as of the date the bankruptcy was filed establish that CIT was oversecured and Debtor's own expert so testified. Debtor asserts that the determination of value for purposes of § 506 is not barred by the aforementioned arguments. However, there is nothing in the record that supports the Debtor's assertion that CIT was under collateralized prepetition. Furthermore, the plan of reorganization provides that CIT is to be paid in full. The Financing Order provides the same.

Debtors' assertion in its motion for summary judgment that CIT was undersecured on the petition date is not supported by the record. In its Amended Complaint the Debtor alleges that in the year prepetition it had received offers to purchase of at least $37 million. Adv. Dkt. No. 36, ¶ 31.[16] Andreas Skibiel was a CIT director who managed the day-to-day lending relationship with Debtor until the summer of 1999. He stated in his Affidavit that in the year prepetition the Debtor received offers to purchase the business and assets of $34 million which was more than enough to pay the Debtor's liabilities in full. *See* Affidavit of Andreas Skibiel, Defendant's Opposition to Plaintiff's Motion for Sum-

mary Judgment as to Count VIII, Exhibit B ¶ 8 at 4, Adv. Dkt. No. 77. Furthermore, under the postpetition Financing Order, CIT is entitled to be paid in full for its pre- and postpetition debt.

■■ Debtor also asserts a cause of action under § 547 in the motion for summary judgment filed on April 1, 2003. It was raised in the motion but was never raised in the complaint. Thus, it was first alleged long after the expiration of the bar date established by the plan. The plan was confirmed on June 2, 2000. Article VIII.B of the plan required causes of action to be filed and served on or before the later of 90 days after the plan Effective Date (*see* note 13, *supra*) and such later date as may be agreed to by the prospective defendant. The plan clearly provides that failure to timely file the cause of action will result in its being "barred and discharged." After the Effective Date, by Agreed Order (on three separate occasions) the Debtor and CIT extended the deadline for Debtor to file its causes of action against CIT. The final Agreed Order required the Debtor to commence any cause of action against CIT or to object to CIT's claims no later than December 15, 2000. The instant adversary was filed on that date and, as noted, neither the Complaint nor the Amended Complaint asserted a cause of action under § 547.[17] A

cured creditors are being paid from CIT's assets. Furthermore, the plan, which provided for payment to CIT, was confirmed and the order confirming the plan affirmed on appeal. *See* Opinion and Final Order of the District Court, Bankr.Dkt. No. 455.

16. Although Debtor's bankruptcy schedules stated that its total asset value was $18,270,358, the price offered to purchase the business indicates the value of the business itself.

17. The Debtor's contention that the Amended Complaint constituted fair notice that a preference cause of action would be asserted is

without merit. The Amended Complaint asserts causes of action including interference with business, breach of duty of good faith and fair dealing, breach of fiduciary duty, fraudulent representations and negligent misrepresentations, inequitable conduct, a demand for an accounting and an objection to the proof of claim on the basis of CIT's inequitable conduct. The Amended Complaint also seeks punitive damages. The entire document sounds in tort. There is nothing in the Amended Complaint that indicates that a cause of action under § 547 is being asserted. Even if it were, inasmuch as CIT's security interest is in first position, CIT is entitled to

cause of action seeking to avoid a preferential transfer must be asserted by adversary proceeding. It cannot be asserted via a motion for summary judgment filed in an adversary proceeding that did not state a preference count. *See* Fed.R.Bankr.P. 7001.[18]

■ Debtor also contends that CIT was an insider and controlled Debtor and that the insider status permits Debtor to seek avoidance of alleged preferential transfers within the year prepetition rather than 90 days. Debtor bases its conclusion that CIT controlled Debtor based on the fact that CIT owned approximately 30 percent of Debtor's common stock and all remaining shares of common stock as well as preferred stock in the A and C series that were pledged to CIT. Because the Pledge Agreement gave CIT the right to vote its shares in the event of default by Debtor,

Debtor asserts CIT controlled Debtor. The Superior Court found to the contrary. *Botsford, et al. v. Dugan, et al.*, GD 95–18718 (Ct.Cmn.Pleas, Allegheny Cty., Pa., April 21, 1998)(unpublished). Its decision was affirmed on appeal, 758 A.2d 667 (Pa.Super.2000), and the Pennsylvania Supreme Court denied review. 564 Pa. 722, 766 A.2d 1242 (2001)(Table). *See* Exhibit E to Appendix in Support of Defendants' Motion to Withdraw the Reference, or to Have the Court Abstain, Adv. Dkt. No. 6.

The Debtor notes that at a hearing on February 28, 2003, this court stated that the Court of Common Pleas' findings regarding CIT were only as of the date CIT exercised its warrants.[19] However, this court also questioned how the Debtor could support allegations that after that date the Court of Common Pleas' findings would not be binding on Debtor. *See* Transcript of February 28, 2003, at 14.

be paid anyway so it will not receive more than it would in a chapter 7. We agree with the Court of Appeals for the Fifth Circuit that because the source of the prepetition payments to CIT was collateral in which CIT held a perfected security interest, the prepetition payments were not preferential. *In re El Paso Refinery, LP*, 171 F.3d 249 (5th Cir. 1999).

18. Even if an action to avoid a preferential transfer could be asserted by motion, a motion for summary judgment is not a proper vehicle for *raising* a cause of action in the first instance. Furthermore, the motion for summary judgment was filed April 1, 2003, well outside the two year time limit of § 546(a).

19. The warrants were transferred to CIT on or about November 1, 1995, and were exercised by CIT on or about November 7, 1995. The Court of Common Pleas of Allegheny County, Pennsylvania, found that the stock warrants were properly transferred and exercised, that there was material compliance with conditions and restrictions placed on the warrants, and that "the issuance of the appropriate stock certificates by [Debtor] was a waiver of any technical noncompliance." *Botsford, et al. v. Dugan, et al.*, GD 95–18718

(Ct.Cmn.Pleas, Allegheny Cty., Pa., April 21, 1998)(unpublished), *See* Exhibit E to Appendix in Support of Defendants' Motion to Withdraw the Reference, or to Have the Court Abstain, Adv. Dkt. No. 6, at 27.

After the argument on the motion to dismiss the Amended Complaint, Debtor filed a motion in the Court of Common Pleas asking the state court judge to clarify Finding of Fact 105 in his opinion of April 21, 1998. That Finding provides:

The purchase of the Banc One warrant and the exercising of the warrants by AT & T [now CIT] was a proper exercise of AT & T's legitimate legal rights. AT & T did not exercise control over the management of [Debtor] or the day-to-day operation of [Debtor].

*Id.* at 24. Debtor sought a ruling from the Court of Common Pleas that this finding related only to CIT's alleged conduct through November 7, 1995. The Court of Common Pleas issued an order saying only that the record before it spoke for itself and required no clarification. *See* Court of Common Pleas Order of October 19, 2000, Exhibit B to Defendants' Response to Plaintiff's Submission Pursuant to Order Dated October 4, 2001, Adv. Dkt. No. 53.

Adv. Dkt. No. 84. In its motion for summary judgment, the Debtor asserts that after November 7, 1995, the date the warrants were exercised, and through the date of the filing of the bankruptcy petition, CIT controlled the Debtor for its own purposes because it was the Debtor's lender, its single largest shareholder and the pledgee of all outstanding equity in the Debtor. The Debtor has alleged nothing new in the post-warrant exercise period that is different from the state of affairs at the time the Court of Common Pleas issued its opinion. No new facts, or any facts for that matter, are stated regarding how CIT allegedly exercised control over Debtor.

The issue of CIT's alleged control of the Debtor was put to rest by the Court of Common Pleas of Allegheny County, Pennsylvania, in the April 21, 1998, opinion of the Honorable Joseph James. *See Botsford, et al. v. Dugan, et al.,* GD 95–18718 (Ct.Cmn.Pleas, Allegheny Cty., Pa., April 21, 1998)(unpublished), *affirmed* 758 A.2d 667 (Pa.Super.2000), *appeal denied* 564 Pa. 722, 766 A.2d 1242 (2001)(Table). *See* Exhibit E to Appendix in Support of Defendants' Motion to Withdraw the Reference, or to Have the Court Abstain, Adv. Dkt. No. 6.[20]

Debtor also argues that the postpetition payments to CIT are avoidable under § 549 because CIT was undersecured as is evidenced by the fact that the proceeds of the asset sale were less than the total amount of Debtor's obligations. This cause of action suffers the same defect as that purported to be asserted under § 547; i.e., it was not timely raised. Furthermore, under the prepetition loan documents, the Financing Order and the plan, CIT is entitled to be paid all pre- and postpetition debt in full. The Debtor asserts that even if the financing order permitted CIT to be paid as it was in this case the order did not comport with § 506 and so was unenforceable. The Debtor never appealed from any of the financing orders and in fact sought the financing. The "Final Order Approving Section 364 Borrowing and Granting Liens", Bankr.Dkt. No. 115, signed February 11, 1999, was entered on the Debtor's motion.[21] It cannot challenge the orders now.[22]

Debtor advances recoupment as an alternative theory in support of its avoidance argument. However, the right of recoupment is a defense to a claim; it is not an interest in property. *Folger Adam Security, Inc. v. DeMatteis/MacGregor JV,*

---

20. The court takes judicial notice of this document.

21. By order entered September 30, 1999, the court approved a Stipulation to Extend the Termination Date in the Final Order Approving Section 364 Borrowing . . . . Bankr.Dkt. No. 273. A Second Stipulation extending the termination date was signed on November 30, 1999. Bankr.Dkt. No. 310. A Third Stipulation was signed on January 28, 2000, further extending the termination date. Bankr.Dkt. No. 341. A Fourth Stipulation was filed on March 29, 2000, at Bankr.Dkt. No. 365 but the docket does not reflect that an order was entered. An order approving the Fifth Stipulation was signed on June 8, 2000. Bankr. Dkt. No. 428.

22. We also note that the Financing Order signed on February 11, 1999, provided that CIT's first priority security interest included "causes of action arising as of the Petition Date pursuant to Sections . . . 547, 548 . . . ." Bankr.Dkt. No. 115, Adv. Dkt. No. 77, Exhibit C, at ¶ 8. Thus, even if Debtor stated a cause of action under § 547, CIT would be secured in that action and therefore entitled to any recovery. Furthermore, Debtor stipulated that all amounts CIT received prepetition were proceeds of CIT's collateral and all assets were subject to CIT's security interest. *See* Skibiel Affidavit, Adv. Dkt. No. 77, at ¶¶ 4, 6. Therefore, even if there were merit to Debtor's § 547 allegations, no benefit would accrue to the estate.

209 F.3d 252, 261 (3d Cir.2000). In addition, recoupment "is the setting up of a demand arising from the same transaction as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim." *In re University Medical Center*, 973 F.2d 1065, 1079 (3d Cir.1992), *rehearing denied, quoting* 4 COLLIER on BANKRUPTCY § 553.03.

> [f]or the purposes of recoupment, .... both debts must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of the transaction without also meeting its obligations.

*In re University Medical Center*, 973 F.2d 1065, 1081 (3d Cir.1992). The purpose of recoupment is to abate or reduce a claim. *Reading Co. v. City of Philadelphia*, 155 B.R. 890, 910 (E.D.Pa.1993). Here, the Debtor seeks to use the doctrine of recoupment as a cause of action, as an offensive weapon rather than a defense against a claim, inasmuch as the Debtor is seeking to recover funds already paid, or set aside to be paid, to CIT.

CIT filed an opposition and memorandum in response to Debtor's motion for summary judgment.[23] CIT points out, and we agree, that under the Financing Order entered February 11, 1999, related loan documentation, the terms of the plan and the terms of the Intercreditor Agreement which was incorporated in the plan, CIT has a valid perfected first priority security interest in all property of the estate and the Debtor, whether existing at the time of the Financing Order or acquired thereafter. This arrangement secured CIT's pre-petition claims as well. The Financing Order provided that all the DIP loan Claims were valid binding obligations of the Debtor. *See* Bankr.Dkt. Nos. 27, 77, 85, 115, 273, 310, 341, 428 (Financing Order and Order Approving 364 Borrowing and Granting Liens, and extensions thereof, Order Confirming Amended Chapter 11 Plan, Bankr.Dkt. No. 420). *See also* Adv. Dkt. No. 77 and Exhibits thereto.

We further note that Debtor filed the motion to approve financing and the motion(s) to extend its term. Debtor also proposed the plan which was confirmed. CIT's DIP Loan Claims are for the amount of postpetition lending plus interest, attorneys fees and expenses, all of which CIT is entitled to pursuant to the terms of the Financing Order. CIT's recitation of facts and figures as expressed in its Memorandum in Support of its (I) Opposition to ... Motion for ... Summary Judgment ...., at 2—6, Adv. Dkt. No. 79, is undisputed by any contrary assertion of facts by Debtor[24] and there is nothing in the record that supports Debtor's allegations.

For the foregoing reasons, we deny Debtor's motion for summary judgment with respect to Count VIII.[25]

We turn now to CIT's motion to dismiss the Amended Complaint.

*CIT's Motion to Dismiss Amended Complaint*

CIT notes that "[t]he fundamental premise of Count I is that [CIT] wrongfully controlled" the Debtor. Motion to Dismiss

---

**23.** It combined the response with a cross-motion for summary judgment and a "supplemental statement in support of [its] motion to dismiss." *See* Adv. Dkt. No. 77. The motion to dismiss is addressed *infra*.

**24.** Although Debtor vehemently argues that CIT'S recitations are in error, Debtor provides no contrary facts. Rhetoric, unsupport-ed allegations, and innuendo do not a genuine dispute of material fact make.

**25.** CIT's improperly filed cross motion for summary judgment need not be addressed based on the rulings on CIT's motion to dismiss the Amended Complaints.

the Amended Complaint at ¶ 2(a) Adv. Dkt. No. 41. The state court found that this was not the case. Debtor has alleged no facts that would alter this conclusion with respect to the period after that considered by the state court. Furthermore, the state court held that there was a business justification for CIT's actions and that its actions were consistent with its rights under loan documents. *Id.* Debtor has alleged no new facts with respect to the time period following that examined by the state court.

In Count II the Debtor alleged that CIT breached a duty of good faith. The state court found that CIT acted within its contractual rights. Debtor has alleged nothing to establish that CIT did not act in good faith thereafter.

■■■ Debtor asserts in Count III that CIT breached a fiduciary duty to the Debtor. Pennsylvania law provides that a lender does not ordinarily owe a fiduciary duty to a borrower. *Grace v. Moll,* 285 Pa. 353, 132 A. 171 (1926); *Federal Land Bank of Baltimore v. Fetner,* 269 Pa.Super. 455, 410 A.2d 344 (1979), *cert. denied* 446 U.S. 918, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980). This Count appears to be based on Debtor's contention that CIT controlled the Debtor. Courts "have permitted lenders to engage in a broad range of conduct to protect their investments without equating such financial controls with the degree of control necessary to impart liability to the lender." *Pearson v. Component Technology Corp.,* 80 F.Supp.2d 510, 521 (W.D.Pa.1999), *affirmed* 247 F.3d 471 (3d Cir.2001), *cert. denied* 534 U.S. 950, 122 S.Ct. 345, 151 L.Ed.2d 261 (2001). Monitoring operations, offering management advice, and even taking an active part in management of the borrower is insufficient. *Id. Krivo Indus. Supply Co. v. National Distillers & Chemical Corp.,* 483 F.2d 1098 (5th Cir.1973), *rehearing denied*

490 F.2d 916 (5th Cir.1974), is the leading case with respect to whether a creditor corporation may be held liable for a debtor's obligations under the instrumentality doctrine. *Pearson,* 80 F.Supp.2d at 521–22. The degree of control required for the instrumentality doctrine to apply "amounts to total domination of the subservient corporation, to the extent that the subservient corporation manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation." *Krivo,* 483 F.2d at 1106. Nothing alleged by Debtor establishes such conduct by CIT after the November 7, 1995, date or reasonably leads to an inference that CIT engaged in conduct that amounted to control of the Debtor after that date.

CIT does not find specific fault with Counts IV and V of the Amended Complaint but asks that those counts be dismissed as well. Count IV asserts that CIT "knowingly made specific false representations of material fact" to Debtor, intending that Debtor act upon the representations. No facts were alleged in support of this conclusory allegation. Debtor has not alleged any facts in support of this allegation. Debtor has alleged nothing that happened after CIT exercised the warrants on or about November 7, 1995, that support any of its assertions in its Amended Complaint. Debtor relies on the period before November 7, 1995, to support its contention that CIT is liable to it for the period after that date.

Count V alleges that CIT knowingly misrepresented material facts to Debtor, "with the intent to induce [Debtor] to act on them." Amended Complaint at 9, Adv. Dkt. No. 36. Again, Debtor cites no new facts arising after November 7, 1995.

Count VI seeks equitable subordination on the basis that CIT engaged in inequitable conduct but, again, no facts are cited

and there is nothing in the record to support a finding that CIT engaged in conduct after November 7, 1995, that is actionable on the bases upon which Debtor relies.

CIT opposed the demand for an accounting in Count VII asserting that Debtor failed to allege facts entitling it to an accounting and that Debtor did not adhere to the court's directive to confer with CIT's counsel in an attempt to resolve the accounting issues. However, an accounting was provided as evidenced by the affidavit of Bryan Krakauer (Adv.Dkt. No. 43) and the exhibits thereto. Thus, it appears that this request is moot. If it is not, the court notes that the Debtor liquidated and the bankruptcy case has been closed. In addition to the instant matter, one other claim remains to be resolved. There would be no purpose for an additional accounting at this point.

Count VIII was dealt with in connection with Debtor's motion for summary judgment.

CIT moves for dismissal of Count IX because it states no separate cause of action and simply requests punitive damages based on allegations in Counts I through VIII. Because Debtor has not stated a cause of action with respect to the period after November 7, 1995, there is no basis for an award of punitive or any other type of damages.

Debtor's opposition to the motion to dismiss states that the judgment entered in state court does not preclude it from bringing the claims it raises in the Amended Complaint. We disagree. The causes of action raised in the Amended Complaint are predicated on the same conduct that was the basis for the state court judgment. Nothing in the record before us establishes a basis for the allegations in the Amended Complaint with respect to the time period after that addressed by the state court.

Debtor also argues that the motion to dismiss should be denied because Debtor has established the counts in its Amended Complaint. For the reasons stated above, we find no merit to this argument.

Debtor also asserts that the motion to dismiss should be denied because CIT does not raise statutes of limitations issues in its brief in support of its motion to dismiss. We need not address this inasmuch as we find that Debtor has not stated a cause of action in its Amended Complaint.

Finally, Debtor argues that the motion to dismiss should be denied because CIT does not raise arguments in its brief with respect to the "collateral effect of the Financing Order." As stated with respect to the motion for summary judgment, the Financing Order was entered with Debtor's Agreement, extended numerous times, there was no appeal taken, and the Financing Order speaks for itself.

For the reasons stated above, including the reasons stated with respect to denial of Debtor's motion for summary judgment, CIT's motion to dismiss the Amended Complaint will be granted.

An appropriate order will be entered.

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT AND GRANTING MOTION TO DISMISS AMENDED COMPLAINT

AND NOW, this 10th day of February, 2005, for the reasons stated in the foregoing Memorandum Opinion, it is **ORDERED, ADJUDGED and DECREED**, that Debtor's Motion for Summary Judgment is **DENIED**.

It is **FURTHER ORDERED** that CIT's Motion to Dismiss Amended Complaint is **GRANTED**. The Amended Complaint is **dismissed with prejudice**.

It is **FURTHER ORDERED** that the Clerk shall close this Adversary.