## In re WORLDCLASS PROCESSING, INC., Debtor.

### WorldClass Processing, Inc., Plaintiff,

### v.

### AT & T Capital Corporation, AT & T Commercial Finance Corporation, Newcourt Commercial Finance Corporation, CIT Corporation, Defendants.

**Bankruptcy No. 98–29986–JKF.**
**Adversary No. 00–2672–JKF.**

United States Bankruptcy Court,
W.D. Pennsylvania.

July 13, 2006.

David Bruce Salzman, Campbell & Levine, LLC, Pittsburgh, PA, Robert O. Lampl, Campbell & Levine, Pittsburgh, PA, for Debtor/Plaintiff.

George E. Yokitis, Pittsburgh, PA, for Defendants.

## MEMORANDUM OPINION [1]

JUDITH K. FITZGERALD,
Bankruptcy Judge.

This court issued a Memorandum Opinion and Order dated February 10, 2005, Adv. Dkt. No. 91, denying a motion for summary judgment filed on behalf of Plaintiff–Debtor WorldClass Processing, Inc. ("WorldClass"), and granting with prejudice Defendant CIT's [2] motion to dis-

---

**1.** This Memorandum Opinion constitutes our further explanation of our findings of fact and conclusions of law based on a remand from the District Court for the Western District of Pennsylvania, CA No. 05–0431, by Memorandum Opinion and Order dated November 21, 2005. *See* Adv. Dkt. No. 101.

**2.** CIT Lending Services Corporation filed pleadings on behalf of the successor to AT & T Corporation and other defendants. CIT was formerly known as Newcourt Commercial Finance Corporation and AT & T Commercial Finance Corporation. *See* Defendant's Memorandum in Support of Its (1) Opposition to

miss the amended complaint. *See In re Worldclass Processing, Inc.,* 323 B.R. 164 (Bankr.W.D.Pa.2005). The parties' dispute arose out of events related to a loan transaction involving WorldClass and CIT. Our February 10, 2005, decision (1) dismissed claims based on events occurring before and after November 7, 1995, based on a prior state court order and (2) dismissed WorldClass's objection to CIT's proof of claim. *See* Adv. No. 00–2672, Dkt. No. 6 at Exhibit E, Findings of Fact, Conclusions of Law, and Decree Nisi filed on behalf of the Honorable Joseph M. James, Court of Common Pleas, Allegheny County, Pennsylvania, Civil Division No. G.D. 95–18718, dated April 21, 1998 (hereafter "Judge James' Opinion, Exh. E").

The District Court remanded on the basis that we did not (1) "explicitly identify the standard of review or burdens applied to" the matter before us or (2) set forth elements or law defining the causes of action or applicable preclusion principles. We therefore address the District Court's concerns.

In April of 2003, WorldClass filed a motion for summary judgment with respect to Count VIII of its amended complaint. Adv. Dkt. No. 73. That count was an objection to CIT's proof of claim and asserted that CIT's inaction and misrepresentation described in the other counts was inequitable and so its indemnification claims were unenforceable, unreasonable and contrary to agreements between CIT and WorldClass. It further asserted that CIT's claims for postpetition interest and indemnification were not sums certain and that amounts CIT had received under the debtor-in-possession facility were not reflected in its claim. A hearing was held on the motion for summary judgment on July 11, 2003,[3] and this court issued its Memorandum Opinion and Order which is the subject of the remand from the District Court on February 10, 2005, Adv. Dkt. No. 91.[4]

■ The standard the court applies is this: a motion for summary judgment shall be granted if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law when the facts are viewed in the light most favorable to the nonmoving party.[5] Fed.R.Bankr.P. 7056, Fed.R.Civ.P. 56(c). *See also Koenig v. Automatic Data Processing,* 2005 WL 2891740 *4 (3d Cir., Nov.3, 2005). On a motion to dismiss, if matters outside the pleadings are presented to and not excluded by the court, the matter is treated as motion for summary judgment. *Brown v. Brock,* 169 Fed.Appx. 579, 581 (11th Cir. 2006). In that instance, parties have the opportunity to present material pertinent to the motion. *Id.* In this case, the parties

Plaintiff's Motion for ... Summary Judgment ... Adv. Dkt. No. 79, at 1.

3. It appears that the transcript of this hearing was docketed twice, at Adv. Dkt. Nos. 89 and 90.

4. In its reply brief with respect to the motion to dismiss, WorldClass asserts that at some point this court made a finding that Judge James' opinion covered only the time period which terminated with CIT's exercise of its warrants in 1995. If this court engaged in that discussion, it was not included in our 2005 Memorandum Opinion. Thus, it is not a finding. Furthermore, the transcript of the hearing held on May 7, 2002, Adv. Dkt. No. 64, establishes to the contrary. *See* text, *infra,* at 143–44.

5. In its opposition to WorldClass's motion for summary judgment and brief accompanying same, CIT purported to assert a cross-motion for summary judgment. Adv. Dkt. Nos. 77, 79. However, no separate motion was filed and a request for relief included in a brief or responsive pleading is not permitted. Motions must be filed separately from responses, briefs, etc., in order that proper notice is provided. *See* Local Rule 1001–2–H.

are relying on the proceedings in the Court of Common Pleas and had the opportunity to present material. *See infra. Cf. Shenango, Inc. v. Apfel,* 307 F.3d 174, 185, n. 6 (3d Cir.2002), *cert. denied sub nom. Shenango, Inc. v. Barnhart,* 539 U.S. 958, 123 S.Ct. 2641, 156 L.Ed.2d 656 (2003)(when parties themselves submit documents outside the pleadings, the appropriate standard of review is that for a motion for summary judgment).

■ The parties do not dispute the material facts, rather the interpretation and legal effect thereof. Thus, the matter is ripe for summary adjudication. The motion for summary judgment asserted that CIT received more payments during the bankruptcy case than it was entitled to inasmuch as it was undersecured prepetition. Our prior opinion pointed out that, under the confirmed chapter 11 plan, CIT was to be paid in full and, although WorldClass asserted in its motion that CIT was undersecured on the petition date, all evidence was to the contrary. 323 B.R. at 168. The fact that CIT was not undersecured was the basis for the chapter 11 plan provisions providing for full payment of CIT's claims and for the Financing Order of February 11, 1999, entered in the main bankruptcy case at Docket No. 115,[6] both of which were proposed and prosecuted by WorldClass. WorldClass's assertion is contrary to its entire prosecution of the bankruptcy case and, at this late date, is both estopped and without evidentiary support. The plan as advocated by WorldClass is confirmed. It was accepted by the creditors of WorldClass and approved by this court. It provided for payment in full to CIT and that provision, a linchpin of the plan, was relied on by the creditors when considering whether or not to accept the plan. The plan confirmation order is final and binding. 11 U.S.C. § 1141. The confirmation order is *res judicata. See, e.g., New Jersey Dept. of Treasury v. Visara Intern., Inc.,* 166 Fed.Appx. 639, 641 (3d Cir.2006)(*res judicata* applied in the bankruptcy context means that a confirmed plan binds every entity that holds a claim or interest and precludes parties from raising claims or issues that could or should have been raised prior to confirmation); *In re Crown Vantage, Inc.,* 421 F.3d 963, 972 (9th Cir.2005)(a confirmed "plan operates as a final judgment with *res judicata* effect"); 11 U.S.C. § 1141 (regarding effect of confirmed chapter 11 plan). WorldClass cannot now change its strategy and advocate the exact opposite position from that which it successfully asserted in, and used to gain confirmation of, its confirmed plan. *See* note 12 and accompanying text, *infra. See also In re Battram,* 31 Fed.Appx. 488, 489 (9th Cir.2002)("[a] confirmed plan 'is binding on all parties[,] and all questions that could have been raised pertaining to [it] are entitled to res judicata effect' ") (citations omitted).

■ In our prior opinion we also noted that WorldClass, without ever having commenced an action under 11 U.S.C. § 547, asserted a preference cause of action under that section in its motion for summary judgment which we rejected for various reasons that were stated in that opinion. *See* 323 B.R. at 170–71. In brief, Rule 7001 of the Federal Rules of Bankruptcy Procedure requires that a preference action, which is a request for

---

6. WorldClass itself proposed the chapter 11 plan and filed the financing motions which provided that CIT would be paid in full and entitled CIT to assert a superpriority administrative claim with respect to any unpaid postpetition obligations. Under the plan, the liens of CIT [identified as "Newcourt" in the plan] were deemed to be valid and full payment was to be made. *See* Amended Plan, Dkt. No. 203; Order Confirming Amended Plan, Dkt. No. 420.

affirmative relief with its own elements, be commenced by an adversary complaint. It cannot be raised and addressed in a motion for summary judgment or an objection to claim. Furthermore, the statutory language is clear that all elements under § 547 must be proven in order for an avoidable preferential transfer to exist. 11 U.S.C. § 547(b). One of those elements is that there was a transfer on or within 90 days prepetition enabling the creditor to receive more than it would if, *inter alia*, the case were a case under chapter 7 of the Bankruptcy Code. 11 U.S.C. § 547(b)(5)(A). If there were no payments within the prepetition preference period, the statutory prerequisites for finding a preferential transfer cannot exist. The parties stipulated that in the 90 days prepetition CIT received no payments whatsoever from WorldClass. Stipulation dated January 2, 2003, Dkt. No. 71, at ¶ 6. Thus, § 547(b)(5)(A) was not met.

▮▮▮ WorldClass's contention that CIT was an insider by virtue of its ownership of WorldClass stock and therefore the year look-back provision of § 547(b)(4)(B) (rather than the 90 day period applicable to noninsiders) applies is time barred inasmuch as no preference action was ever commenced and the time to do so has long expired. The argument that CIT was "in control of" WorldClass at all relevant times, in the sense of operating the Debtor or dictating operations, has been adjudicated against WorldClass in the state courts. It cannot be reasserted here. *See* discussion of the *Rooker–Feldman* doctrine, *infra* at 139. WorldClass's assertion is that CIT was not only WorldClass's senior lender, it also became the single largest shareholder when it exercised its warrants. This argument was the fundamental basis for WorldClass's position in the state court and in this court. However, the Court of Common Pleas specifically found that CIT was not in control, notwithstanding the exercise of the warrants, *Botsford, et al. v. Dugan, et al.,* GD 95–18718 (Ct.Cmn.Pleas, Allegheny Cty., Pa., April 21, 1998)(unpublished), its decision was affirmed on appeal, 758 A.2d 667 (Pa.Super.2000), and the Pennsylvania Supreme Court denied review. 564 Pa. 722, 766 A.2d 1242 (2001)(Table). *See* Exhibit E to Appendix in Support of Defendants' Motion to Withdraw the Reference, or to Have the Court Abstain, Adv. Dkt. No. 6. For the time periods after those covered by the state court's opinion, we found that WorldClass alleged no facts and provided no evidence to support its arguments regarding CIT's conduct. The allegations of control, breach of fiduciary duty, etc., in the amended complaint were all based on conduct considered by the state court and which the state court specifically found did not constitute the exercise of control.[7]

---

**7.** In § 101(2) of the Bankruptcy Code "affiliate" is defined as, *inter alia*, an "entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, other than an entity that holds such securities" in certain capacities. The mere fact that CIT may have been, by definition, an affiliate and, therefore, an insider by virtue of § 101(31)(E), does not establish the type of control which WorldClass complains existed in this case. Even if such control had existed within one year prepetition, WorldClass did not allege any facts other than those considered by Judge James. Therefore, even if the one-year reachback period applied, the issue of control still cannot be established. Further, WorldClass cannot now assert the one year reachback on any theory because the statute of limitations has passed. There was no complaint filed within the limitations period for a preference action and WorldClass cannot now pursue this effort. 11 U.S.C. § 546(a); Fed.R.Bankr.P. 7001.

WorldClass argues that Count VIII of its Amended Complaint was sufficient to state a cause of action under § 547. *See* Plaintiff's

At a hearing on May 4, 2001, this court permitted WorldClass to file the amended complaint but required WorldClass to allege acts of control that occurred after the period encompassed within the state court's ruling. *See* Adv. Dkt. No. 33, Transcript of May 4, 2001, at 24 ("I think you're going to have to amend the complaint ... So if you've got something specific ... it's going to have to be alleged .... if you have something that goes beyond these exercises of the warrants ... it should be stated. If there's something postpetition ... that should be stated .... the time frames do need to be stated .... you have to show something else ...").[8] *Id.* at 32–35. Otherwise, WorldClass was faced with a judgment against it on the issue of control, which was adjudicated against its position, and it could not prove an element of its case. The amended complaint filed on July 7, 2001, Adv. Dkt. No. 36, did not comply with the court's directives. A motion to dismiss the amended complaint was filed on August 2, 2001, Adv. Dkt. No. 41, and a hearing was held on September 28, 2001. Apparently, the parties did not order a transcript as none appears on the docket of either the adversary or the main case. Thus, the court has no official transcript to cite. However, the recording of the hearing and this court's notes of the argument on the motion to dismiss, Adv. Dkt. No. 50, indicate that WorldClass continued to argue, as it had before Judge James and before this court prior to our 2005 Memorandum Opinion, that CIT interfered with WorldClass's business relationships with other creditors and that, because it had a pledge of stock and could control the board, it breached its fiduciary duty.

As stated in our prior opinion and in this opinion, these were the same arguments advanced by WorldClass that failed in the state court. Although, according to the District Court's remand opinion, the parties agreed that the state court decision rested on events occurring before November 7, 1995, we have again reviewed the record and find to the contrary. That is, the state court's findings and conclusions of April 1998 and a summary judgment order of October 1998[9] disposed of all

Brief in Support of its Motion for Summary Judgment as to Count VIII of the Amended Complaint ..., Adv. Dkt. No. 74, at 8. A reading of that Count shows the contrary. The Count is an objection to claim. *See* text, *supra*, at 135. Moreover, the Federal Rules of Bankruptcy Procedure require that an adversary be filed that is specific to 11 U.S.C. § 547. *See, e.g. In re Sanglier,* 124 B.R. 511, 512, n. 2 (Bankr.E.D.Mich.1991)(debtors' motion to avoid a lien as a preference would be denied without prejudice because such a request must be brought in an adversary proceeding pursuant to Fed.R.Bankr.P. 7001). *See also In re Indri,* 126 B.R. 443, 444 (Bankr.D.N.J.1991)(actions for avoidance under § 547 must be brought by adversary proceeding); *In re Fitak,* 93 B.R. 589, 590 (Bankr.S.D.Ohio 1987)(court had previously ruled that an adversary proceeding must be commenced to exercise avoidance powers under 11 U.S.C. § 547). *Cf. Matter of Hailes,* 77 F.3d 873, 874, n. 1 (5th Cir.1996)(rather than objecting to claim debtor should have "attempted to avoid the preferential transfer ... pursuant to 11 U.S.C. § 547, as required by Bankruptcy Rule 7001").

8. The parties disagree as to the time period encompassed by Judge James' ruling in the Court of Common Pleas. We addressed that in our prior Memorandum Opinion and do so again *infra.*

9. At the September 2001 hearing, counsel for WorldClass initiated a discussion of whether the summary judgment order in the state court granted summary judgment for AT & T and the other defendants against *all* the state court plaintiffs because the order uses the singular word "plaintiff." The appeal to the Superior Court makes it clear that, notwithstanding the wording of the summary judgment order in the Court of Common Pleas, summary judgment was granted against *all*

causes of action raised by WorldClass in favor of AT & T. Discovery ended in the state court matter in April 1998 and the state court's rulings in April and October of 1998 were based on what the parties presented at that time.

This court made clear at the September 2001 hearing that WorldClass had been given the opportunity months before to supplement the record with respect to events after April of 1998 that supported WorldClass's allegations of AT & T control and WorldClass alleged only events with respect to prior time periods. We stated at the September 2001 hearing that if the parties had a problem with Judge James' findings they should have raised it on the appeal in the state court system. This matter went all the way to the Pennsylvania Supreme Court (which denied review) and there has been nothing alleged before this bankruptcy court that was not alleged and addressed in the state court and by this court during the course of the bankruptcy. We further noted at the September 2001 hearing that Judge James' opinion expressly stated that it was addressing the situation as it existed as of that date in 1998 (April 21) and that *to that date* AT & T had not exercised control.

■ The proceedings in this court are an impermissible attempt to retry what was tried in the state court. There was lengthy discovery; there was a trial; there was post-trial discovery, a summary judgment motion and ruling, and an appeal to the state supreme court. The same allegations made there were repeated here. This court is required to give the same

preclusive effect to a state court ruling that another court of the state would give. *Balthazar v. Atlantic City Medical Center*, 137 Fed.Appx. 482, 488, n. 4 (3d Cir.2005). *See also In re Knapper*, 407 F.3d 573, 580, n. 15 (3d Cir.2005)(the Rooker–Feldman doctrine applies to cases brought by state court losers). *See also Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005)(*Rooker–Feldman* doctrine is confined to cases brought by state court losers complaining of injuries caused by state court judgments rendered before federal court proceedings commenced and inviting federal review and rejection of the state court judgments). Nowhere in pleadings or argument before this court did World-Class allege conduct that occurred after the exercise by CIT of the warrants ruled on by Judge James in 1998—it alleged that there was conduct but did not identify any conduct or circumstances other than what was encompassed in Judge James' opinion and his ruling on summary judgment in October of 1998.[10]

At the conclusion of the summary judgment hearing before this court we gave CIT the opportunity to supplement the record with copies of the motion for summary judgment, responses thereto, and briefs filed in the state court action that led to Judge James' 1998 ruling, and permitted WorldClass to further supplement the record. On October 1, 2001, CIT filed submissions pursuant to that invitation. Adv. Dkt. No. 49. Debtor WorldClass supplemented the record on October 31, 2001. Adv. Dkt. No. 52.

---

plaintiffs. WorldClass was one of the plaintiffs in the state court action. *See* Exhibit G, Opinion of the Superior Court of the Commonwealth of Pennsylvania dated July 19, 2000, Appendix in Support of Defendants' Motion to Withdraw the Reference, or to Have the Court Abstain, Adv. Dkt. No. 6 (repeated reference to "appellants" which per

the caption of the Superior Court's opinion includes WorldClass).

**10.** WorldClass also alleged that CIT breached an oral agreement to provide refinancing. Judge James found no obligation on CIT's part to refinance.

CIT's submission consists of its motion for summary judgment filed in the state court after that court's issuance of findings in April of 1998, CIT's brief in support thereof, and the response and brief filed by WorldClass and others. The motion for summary judgment filed in state court states that WorldClass failed to prove that CIT was involved in WorldClass's day to day operations, that the state court had already so found and that, in light of the state court's ruling, lender liability could not be established. CIT further argued that WorldClass failed to establish a fiduciary relationship between the two entities because WorldClass could not establish the requisite control. The state court held a trial and issued a final ruling in October of 1998.

WorldClass's supplemental submission to this court in October of 2001 consisted of an additional brief and a transcript from October 29, 2001, of a hearing in state court in which WorldClass asked Judge James to clarify his 1998 findings. Judge James declined to interpret his ruling, leaving it to this court to do so. The brief sets forth argument with respect to the interpretation of Judge James' ruling. However, in reference to his invitation to WorldClass to introduce additional discovery with respect to the motions for sum-

mary judgment that he decided in October of 1998 (which was within the 90 day preference period) and the fact that nothing additional was submitted by WorldClass, Judge James stated

> So nothing else was put in from the time of the spring of '98 when I made the findings until the motion for summary judgments [sic] were argued in October of '98 despite the fact that the Plaintiff [WorldClass and others] was invited to introduce the discovery.

Transcript of Proceedings of October 19, 2001, in the Court of Common Pleas of Allegheny County, Pennsylvania, Civil Division, GD95–18718, at 17, Exhibit 1 to Plaintiff's Submission Pursuant to Order Dated October 4, 2001, Adv. Dkt. No. 52. In the matter before this bankruptcy court WorldClass was permitted to amend its complaint to state facts with respect to time periods it alleged were not covered by Judge James' order and it failed to do so.[11]

▮ WorldClass's brief contains the argument that CIT's alleged control of WorldClass and other alleged inequitable conduct established that CIT's claim was not valid.[12] The Court of Appeals for the Third Circuit reviewed the issue of lender liability with respect to the "control" issue in different contexts in *Pearson v. Compo-*

---

11. Repeatedly WorldClass asserted that the sale price for its assets was insufficient. However, at the September 28 hearing, counsel for WorldClass itself stated that the asset sold for $18 million, although it was appraised at $21 million. The assets were marketed for 1½ years, 200 bidders were solicited, and the sale price was still $18 million. There has been no allegation of impropriety with respect to the sale process. *Cf. BFP v. Resolution Trust Corp.*, 511 U.S. 531, 541, 114 S.Ct. 1757, 128 L.Ed.2d 556, *rehearing denied* 512 U.S. 1247, 114 S.Ct. 2771, 129 L.Ed.2d 884 (1994)(when a state's foreclosure procedures are followed, "mere inadequacy of the foreclosure sale price is no basis for setting the sale aside").

12. *See, e.g.,* Plaintiff's Brief in Reply to Defendant's Memorandum in Support of its (1) Opposition to Plaintiff's Motion for ... Summary Judgment as to Count VIII, Adv. Dkt. No. 83, at 2, wherein WorldClass asserts that because CIT was undersecured, was paid its allowed secured claim, and was an insider of WorldClass on the petition date, WorldClass is entitled to recoup amounts paid on account of the prepetition debt in the one year prepetition. WorldClass argues that the point is whether CIT was paid more on account of the prepetition debt than the value of the prepetition collateral. The plan, Intercreditor Agreement, and a stipulation entered into between the parties belie this assertion.

*nent Technology Corp.*, 247 F.3d 471 (3d Cir.), *cert. denied* 534 U.S. 950, 122 S.Ct. 345, 151 L.Ed.2d 261 (2001). In *Pearson*, a WARN Act case, the court found most relevant those precedents in which third parties seek to impose liability on lenders on the theory that the degree of control exercised by the lenders was such that the borrowing corporation was "functionally being run by the lenders, or solely for the lenders' benefit, to the detriment of other creditors." *Id.* at 491. Such tests are akin to those used to determine whether the corporate veil should be pierced or whether an alter ego situation exists. The court found that although the "total control" test as expressed by the Court of Appeals for the Fifth Circuit in *Krivo Indus. Supply Co. v. National Distillers & Chemical Corp.*, 483 F.2d 1098 (5th Cir. 1973), *rehearing denied* 490 F.2d 916 (5th Cir.1974), was appropriate in many contexts, it was not when the issue involved the WARN Act. What is pending in the case at bar is not a WARN Act matter. Thus, it appears that the Court of Appeals for the Third Circuit, like that for the Fifth Circuit, expects the "total control" standard to apply. Even if that test does not apply, no facts are asserted in support of the alleged control that have not already been subject to adjudication. Essentially, the control inquiry is whether the corporation is "little more than a legal fiction." *Trustees of Nat. Elevator Industry Pension, Health Benefit and Educational Funds v. Lutyk*, 332 F.3d 188, 194 (3d Cir.2003). Fundamental unfairness must be shown to exist. *Id.* Neither total control nor the "legal fiction" exists in this case and the confirmed plan, binding on Debtor and its creditors and equity holders, governs.

▬▬ *Krivo* was a case in which creditors of a reorganized debtor brought an action against the debtor's major creditor alleging domination by the creditor to the extent that the debtor was a mere instrumentality of the creditor. The Court of Appeals for the Fifth Circuit in Krivo noted that stock ownership is insufficient to demonstrate control. The existence of a debtor-creditor relationship is also not a basis, in and of itself, to find control. There must be "actual, participatory, total control of the debtor." 483 F.2d at 1105. There must be a showing of no separate independent corporate existence and the subservient corporation must be shown to have been used to further the purposes of the controlling corporation. *Id.* In addition, fraud or injustice must be shown proximately to result from misuse of control. *Id.* at 1106. WorldClass has alleged, in essence, only that through CIT's ability, in 1995 and 1996 (and apparently thereafter), to appoint some board members and its refusal to support certain members of the board in a desire to begin a new project which would require CIT to participate in a refinancing plan, CIT controlled WorldClass to WorldClass's detriment. This is the same conduct found by the state court to be insufficient to establish liability by CIT. WorldClass alleged no new facts with respect to the one year prepetition or thereafter.

*In re KDI Holdings, Inc.*, 277 B.R. 493 (Bankr.S.D.N.Y.1999), stated the following:

> Lender liability is established by application of the instrumentality doctrine, which requires: (1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and (2) Such control must have been used by the defendant to commit fraud or worse, to perpetrate the violation of a statutory or other positive legal duty, or

a dishonest and unjust act in contravention of plaintiff's legal rights; and (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of. *Fisser v. International Bank*, 282 F.2d 231, 238 (2d Cir.1960) (citing *Lowendahl v. Baltimore & Ohio R.R. Co.*, 247 A.D. 144, 287 N.Y.S. 62, 76, *aff'd.*, 272 N.Y. 360, 6 N.E.2d 56 (1936)). To establish lender liability through the use of the instrumentality doctrine in the context of a creditor-debtor relationship, "courts require a strong showing that the creditor assumed actual, participatory and total control of the debtor. Merely taking an active part in the management of the debtor corporation does not automatically constitute control...." *Krivo Industrial Supply Co. v. National Distillers and Chem. Corp.*, 483 F.2d 1098, 1105 (5th Cir.1973), *reh'g denied*, 490 F.2d 916 (5th Cir.1974). *See also National Westminster Bank USA v. Century Healthcare Corp.*, 885 F.Supp. 601, 603 (S.D.N.Y.1995)(quoting *Krivo)*. Moreover,

> [l]ender liability is predicated on an unmistakable showing that the subservient corporation in reality has no separate, independent existence of its own and was being used to further the purposes of the dominant corporation. Suggestions by a major lender for a defaulted debtor, even when coupled with a threat of the exercise of its legal rights if the debtor does not comply, are both commonplace and completely proper. *National Westminster [Bank USA v. Century Healthcare Corp.]*, 885 F.Supp. [601] at 603 [(S.D.N.Y.1995)].

*KDI Holdings, supra,* 277 B.R. at 515–16. Nothing that WorldClass has proffered has met even a lesser version of this control test. Further, via, at the very least, the postpetition Financing Motion and Order and its confirmed plan, WorldClass agreed to and advocated the very circumstances it now disputes.

In its opinion of April 21, 1998, in the matter of *Botsford, et al. v. Dugan, et al.,* G.D. 95–18718 (Allegheny County Court of Common Pleas), with respect to the exercise of the warrants and CIT's control, the state court found that (1) the warrants were properly exercised, (2) CIT had business justification for exercising its warrants, (3) under the parties' contract, changes in focus or additional indebtedness of WorldClass Processing was subject to CIT's approval, which was not forthcoming with respect to a particular project and (4) CIT declined to become a lender in that particular project. The court further found that the issuance of stock to CIT pursuant to the warrants was a contractual obligation approved by the company's officers, directors and shareholders as a condition of the initial loan by CIT and that it was "not a 'transaction in control.'" *Id.* at 28. The court found that ousted directors Matthew W. Botsford, Jr., and Edward Neese, plaintiffs individually and as shareholders/directors on behalf of WorldClass, had breached their fiduciary duty to WorldClass. *See* Exhibit E, Appendix in Support of Defendants' Motion to Withdraw the Reference or to Have the Court Abstain, Adv. Dkt. No. 6 (hereafter "Appendix, Dkt. No. 6 at ___"). CIT was found not to be responsible for WorldClass's financial problems. These findings were made after at least 13 days of trial. *See Botsford, et al. v. CIT Capital Corp., et al.,* Civ. A. No. 97–2049, Appendix, Dkt. No. 6 at Exhibit J, at 6.

Further, in an action filed in the District Court for the Western District of Pennsylvania, Civ. A. No. 97–2049, *id.* at Exhibit J, Botsford and Neese, individually and as shareholders on behalf of WorldClass, and WorldClass itself made the same accusa-

tions of usurpation of control. This action was filed while the state court action was pending. The district court found that *Colorado River* abstention was not appropriate inasmuch as the action included additional defendants and as a result of a motion to intervene an additional plaintiff would be added as well as additional federal causes of action. The district court further noted that, notwithstanding the foregoing, principles of collateral estoppel might bar relitigation of factual findings if the standards used in state court were the same as those used in federal court. On the issue of control, the standards are identical and WorldClass failed to meet its burden by even preponderate evidence. The district court case was closed in April of 2004 based on a stay issued by the district court in light of the pendency of the bankruptcy case. We addressed the issues in our prior Memorandum Opinion. Everything alleged by WorldClass in support of its amended complaint was based on and resulted from the same conduct that the state court found did not constitute control. Nothing was presented to this court in the amended complaint that was not based on events and conduct previously ruled on by the state court. Thus, having had multiple opportunities to supplement the record and having failed to supply any new information on any of those opportunities, WorldClass's arguments ring hollow.

With respect to the pending motion to dismiss the amended complaint, the standard the court must use is to accept "all facts of the pleadings and reasonable inferences to be drawn therefrom ... as true." *In re Tower Air, Inc.*, 416 F.3d 229, 235 (3d Cir.2005). However, absent specific facts, the allegations are not accepted as true. *Id.* The only "specifics" alleged in the amended complaint hark back to the time period covered by the state court's ruling and were addressed in our 2005 Memorandum Opinion.

In its amended complaint WorldClass argues that in 1996, years before WorldClass filed bankruptcy, CIT prevented it from accepting an offer of financing from Citicorp Venture Capital and that such financing would have benefitted WorldClass by reducing the amount owed under its credit facility. We have reviewed the record, including the state court's opinion of April 21, 1998, and our prior opinion of February 10, 2005. We conclude that Judge James' ruling applied to events up to and including the date of his April 21, 1998, opinion. At the hearing before the undersigned on the motion to dismiss held on May 4, 2001, counsel for CIT pointed out that Judge James found that the recapitalization plan presented to WorldClass's board in January of 1996 had not been approved by CIT as of April, 1998. Adv. No. 00–2672, Dkt. No. 6, Judge James' Opinion, Exh. E, at ¶ 5. In his opinion, Judge James referred to the January 1996 adoption of resolutions by WorldClass's board that authorized WorldClass officers to "evaluate and if appropriate pursue a recapitalization plan for WCP." *Id.* at ¶ 105. The resolutions called for restructuring the CIT loan, among other things. *Id.* at ¶ 109. That plan had not been adopted or approved by CIT as of the time of Judge James' opinion and he found that there was no requirement that CIT, as the senior lender, give approval to the refinancing plan or agree to restructure its loan. *Id.* at ¶ 110.[13] The court held that

---

**13.** In the amended complaint Debtor WorldClass argued that CIT prevented WorldClass from accepting an offer of financing from Citicorp Venture Capital and that such financ-

ing would have benefitted the Debtor by reducing amounts owed by Debtor. This is alleged to have occurred in 1997 which is

resolutions by the board with respect to alternative forms of refinancing which were not acted upon did not constitute evidence of self-dealing. *Id.* at ¶ 5.

At a hearing before this court held on May 7, 2002, we noted that Judge James' findings covered a period extending *at least* through February 29, 1996. Transcript of May 7, 2002, Adv. Dkt. No. 64, at 12. This court also examined Judge James' 1998 finding that CIT never approved the loan with respect to which WorldClass's board had passed resolutions in 1996 and concluded that that finding was "true as of the date of his opinion [April 21, 1998], and in fact was still true as of the date of the sale of assets here in this Court [June 2, 2002]." *Id.* at 11.[14] *See* Order ... Granting ... Motion to Sell Real and Personal Property of the Estate ..., Dkt. No. 419. *See also* Transcript of May 7, 2002, Adv. Dkt. No. 64, at 15.

Even if Judge James' ruling did not extend beyond the exercise of warrants by CIT, it is clear to this court that the allegations with respect to the later time period are exactly the same, and cover the identical time period, as those considered by Judge James. *See* Amended Complaint, Adv. No. 00–2672, Dkt. No. 36, and Supplemental Submissions at Dkt. Nos. 49, 52. With respect to the time periods after those considered by Judge James, which, as stated *supra*, culminated with the October 1998 ruling, this court's rulings on the record on May 7, 2002, govern, as does our 2005 Memorandum Opinion. Further,

WorldClass did not allege specifics of any improper conduct after the date of Judge James' opinion; bald allegations of improper conduct are insufficient to state a cause of action. We gave WorldClass ample opportunity (the amended complaint, supplements to the record, various hearings) to state allegations that were specific to the later time and it failed to do so.

■■■ The confirmed chapter 11 plan was the product of negotiation among, *inter alia,* Debtor (WorldClass), CIT, and the creditors' committee. The plan was proposed, advocated, and prosecuted by WorldClass and provided that CIT was to be paid its entire claim, without reservation. Under the confirmed and binding chapter 11 plan and the Intercreditor Agreement, CIT is to be paid in full first and, if funds remain thereafter, they are to be paid to the post-confirmation successor to WorldClass, WCP LLC. The parties agreed that CIT did not receive distributions of an amount sufficient to pay even the undisputed portion of its claim. Thus, WorldClass also failed to establish that CIT received improper payments. Inasmuch as CIT has not been paid the undisputed portion of its claim, WorldClass's argument that CIT was overpaid is also without merit.

In addition, WorldClass and CIT entered into a Stipulation dated January 2, 2003, Adv. Dkt. No. 71, which stated, in pertinent part:

within the time period considered and ruled on by Judge James.

14. The plan of reorganization was confirmed the same day the sale order was entered. Dkt. No. 420. The confirmation order was appealed but the appeal was withdrawn, and an order approving the withdrawal was entered. *See* Dkt. Nos. 434, 507, 541, 542. Furthermore, an appeal of the order confirming the sale was filed but withdrawn and an

order was entered approving that withdrawal. *See* Dkt. Nos. 430, 438, 482, 488. We note that WorldClass, which was the proponent of the sale and plan, did not file the appeals. Rather, the appeals were filed by Edward Neese and Matthew Botsford, former directors, who Judge James found had breached their fiduciary duty to WorldClass. Judge James' Opinion, Appendix, Exh. E, at 29.

1. To secure payment of the Obligations [under the 1993 Credit Agreement] the Debtor [WorldClass] granted to CIT a first priority security interest in, and lien on, substantially all of its assets, both real and personal (the "Prepetition Collateral")....

3. As of the Petition Date [December 18, 1998], the Obligations exceeded $21 million (the "Prepetition Indebtedness"), comprised of $17,479,283 in principal, $863,152 in accrued but unpaid interest, at least $900,000 in indemnity claims asserted by CIT ..., and at least $1.9 million that CIT asserted arose under warrants held by it....

4. At all relevant times after December 17, 1993[,] and until and including the Petition Date, CIT maintained its first perfected priority security interest in, and lien on, the Prepetition Collateral.

5. As of December 18, 1997[,] (that is, one year prior to the Petition Date), the Debtor owed CIT the sum of $18,645,339 under the Credit Agreement, exclusive of the Asserted Indemnity Claims and the Asserted Warrant Claims.

6. In the year preceding the Petition Date (that is, from December 18, m 1997[,] through the Petition Date, the Debtor remitted to CIT ... the sum of $2,187,274.... CIT avers that all such payments were remitted from proceeds of PrePetition [sic] Collateral in which CIT has a first priority security interest.... In the 90 days preceding the Petition Date, CIT received no payments on account of the Obligations.

7. On February 11, 1999, the Court entered its "Final Order Approving Section 364 Borrowing and Granting Liens" (the "Financing Order") [authorizing] Debtor and CIT to enter into certain postpetition loan transactions....

8. CIT loaned the Debtor a total of $12,748,000 under the Financing Order (the "Postpetition Indebtedness").

9. Subsequent to the entry of the Financing Order, CIT received a total of $32,902,285.06 from the Debtor.... The Postpetition Remittances were generated from the collection of the Debtor's receivables in the ordinary course of business, the sale of the Debtor's assets under ... section 363.... The Debtor's assets, exclusive of a limited amount of ... assets, were sold in June, 2002[,] for ... approximately $18,207,348.00.

10. Out of the Postpetition Remittances, CIT applied $21,096,724 to the Prepetition Indebtedness. Of that ... CIT applied $18,342,796 to principal and interest accrued but unpaid as of the Petition Date and $2,753,928 was applied to interest accrued after the Petition Date through June 30, 2000. As a result ... the Debtor paid all of the Prepetition Indebtedness with the exception of the Asserted Indemnity Claims and the Asserted Warrant Claims.

11. CIT also applied $11,805,561 of the Postpetition Remittances to reduce the Postpetition Indebtedness. Of that ... CIT applied $11,192,611 to principal and $612,950 to interest that had accrued through June 30, 2002.

12. As of January 31, 2002, $1,944,835.95 of Postpetition Indebtedness comprised of $1,555,389 in principal and $389,447.21 in accrued but unpaid interest is claimed to be due and owing from the Debtor to CIT.... CIT claims further their [sic] remains due PostPetition [sic] Indebtedness consisting of reimbursement

claims for attorneys fees and expenses incurred by CIT after the Petition Date and claims for interest accruing after January 31, 2002.

CIT notes in its Memorandum in Support of its (I) Opposition to Plaintiff's Motion for ... Summary Judgment ..., Adv. Dkt. No. 79, at 3, n. 1 (hereafter "CIT's Opposition, Adv. Dkt. 79, at ___"), that the Indemnity Claim arises pursuant to Section 8.07 of the Credit Agreement and at least two letter agreements. Section 2.05 of the Credit Agreement, read with the Credit Agreement definitions, provides that after a default (which occurred prepetition), interest accrued at 13.25 percent per year and the parties agreed on the amount in ¶ 10 of the Stipulation, *supra.* The confirmed plan and the Intercreditor Agreement [15] entitle CIT to the postpetition interest. *See* Adv. Dkt. No. 79 at 4. Further, CIT holds separate claims arising from the postpetition financing order. *See* Stipulation, *supra,* Adv. Dkt. No. 71, at ¶ 8. The Financing Order itself gave CIT a valid, perfected, enforceable first priority security interest in and lien on all property of WorldClass and its bankruptcy estate, including certain causes of action, with respect to new loan advances. *See* Financing Order, Dkt. No. 115. The Financing Order also granted CIT, as adequate protection with respect to its prepetition claims, a security interest in all WorldClass's and the estate's property, then existing or thereafter acquired. Further, the Financing Order, which has been a final, binding order since February of 1999, governs the application of payments by WorldClass to CIT and directs that payments be applied first to prepetition debt whether arising or accruing before, on, or after the petition date, and that CIT is not required to return any payments improperly received or applied as long as it is owed anything.[16] WorldClass stipulated to the amount paid to CIT postpetition, Stipulation at ¶ 9, and that the funds were generated from collection of receivables. *Id.* The receivables were CIT's collateral. *See* Stipulation at ¶¶ 1, 4.[17]

CIT's position and our conclusion in our prior Memorandum Opinion are further supported by the terms of the plan that was confirmed in this case. For instance, the confirmed plan provides that all of CIT's rights with respect to the Financing Order and its prepetition Credit Agreement and other agreements remain in effect. *See* Amended Chapter 11 Plan Dated 7/12/99, Dkt. No. 203, at art. IV.A.1. The plan further provides that CIT is to be paid before any payments are made to Debtor WorldClass, Plan art. IV.A.1.5,[18] and that CIT and Debtor are to be paid in full before there is any distribution to equity holders. Plan art. IV.A.7–8.

A copy of this Memorandum Opinion on Remand will be transmitted to the Honorable Donetta W. Ambrose, Chief U.S. District Judge, District Court for the Western District of Pennsylvania.

---

15. The Intercreditor Agreement was incorporated in the plan.

16. The Financing Order further provides that CIT may exercise its discretion to reverse any application of payments to reapply the funds to other amounts it is owed.

17. CIT provided a calculation to support the fact that it has not been paid in full. *See* CIT's Opposition, Adv. Dkt. 79, at 6–7. WorldClass provided nothing to the contrary.

18. $500,000 of the amount was subordinated to a payment that was to be made to WCP LLC. WCP LLC is a Class 5 creditor under the plan. CIT is Class 1.