J-S65001-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| TERRY SUTTON, BRENDA L. SUTTON, AND CHRIS CINKAJ | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 609 MDA 2018 |
| PEOPLES BANK | : | |

Appeal from the Order Entered April 3, 2018
In the Court of Common Pleas of York County Civil Division at No(s):
2015-SU-000735-67

BEFORE:  SHOGAN, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY SHOGAN, J.:                **FILED JANUARY 09, 2019**

Appellants, Terry Sutton, Brenda L. Sutton, and Chris Cinkaj, appeal from the order granting summary judgment in favor of Appellee, Peoples Bank ("the Bank").  We affirm.

The trial court summarized the facts and procedural history of the case in its order[1] granting summary judgment, as follows:

> Plaintiff Terry L. Sutton is a person who does business under the trade name "Cinkaj Brogue Partnership" and resides in York County, Pennsylvania.  Plaintiff Brenda L. Sutton is also a person who does business under the trade name "Cinkaj Brogue Limited Partnership" and resides in York[] County, Pennsylvania.  Plaintiffs Terry and Brenda Sutton are also husband and wife.  Plaintiff Chris Cinkaj is a person who does business under the trade name "Cinkaj Brogue Partnership" and resides in Langhorne, Pennsylvania.  Plaintiff Brogue Limited Partnership is a Pennsylvania limited partnership located in York, Pennsylvania.

_____

[1]  The trial court's eighteen-page order is in the nature of an opinion.

Defendant Peoples Bank, Codorus Valley Bancorp, Inc.[,] is a one-bank holding company headquartered in York, Pennsylvania.

Plaintiffs [were] part owners of the Brogue Center (hereinafter the "Property"), located at 2514 Delta Road, Chanceford Township, York County, Brogue, PA. The Property consists of a shopping center in which a number of tenants were under lease. Defendant operated a branch office in Suite #8 in the Property and had a signed lease with Plaintiffs. On February 13, 2006, Plaintiff Cinkaj executed an open end[ed] mortgage line of credit from Defendant in the sum of one million dollars[,] and Plaintiffs Terry and Brenda Sutton borrowed from Defendant the sum of $150,000 from a line of credit for commercial purposes. Plaintiff Cinkaj had unlimited unrestricted access to the first $500,000 of the open ended mortgage line of credit and the second $500,000 was restricted to a prior notice from Plaintiff Cinkaj to Defendant and consent of Defendant bank.

On or about June 15, 2010, Plaintiff Cinkaj withdrew $500,000 from his line of credit from Defendant to finance future construction projects. On August 30, 2011, Kent Ketterman, Senior Vice President of Defendant, sent an email to Plaintiff Cinkaj stating that he had withdrawn money from his restricted $500,000 line of credit without Defendant's consent. On November 1, 2011, Kent Ketterman sent correspondence to Plaintiff Cinkaj stating that Defendant put his line of credit in default and that the line of credit must be paid to a maximum balance of $500,000 by June 5, 2012. Plaintiffs Terry and Brenda Sutton's line of credit would remain frozen until additional collateral could be provided or when the line was paid back to the required level.

On or about February 1, 2012, Plaintiffs began to research the possibility of opening an adult entertainment business[2] at their Property. On that same date, Plaintiffs allege that they entered into oral negotiations with Jeff Levy, representing Spearmint Rhino Entertainment, to purchase a space at the Property known as "The Office" to run an adult entertainment business. On March 5, 2013, Plaintiffs alleged that they entered

---

[2] A related lawsuit described this business as "a cabaret featuring nude dancing in the shopping center." *Sutton v. Chanceford Twp.*, 298 F.Supp.3d 790, 793 (M.D. Pa. 2018) ("*Sutton II*").

into a lease with Terry Thompson to open "the Office," an adult entertainment business, in a vacant space at their Property.

On March 12, 2013, Plaintiffs submitted an Application for Special Exception to the Chanceford Township Zoning Hearing Board ["Zoning Board"] seeking to make use of their Property as an Adult Oriented Facility. Plaintiffs allege that the application met all of the criteria of the Ordinance as set forth in order for Chanceford Township Zoning Hearing Board members to approve the application for special exception.

On April 16 2013, the Chanceford Township Planning Commission held a meeting. During this meeting, Plaintiffs allege that Defendant's agent, Paul Minnich, stated during the public comment period that Plaintiffs failed to meet the condition of harmony with orderly and appropriate development of the zone. Plaintiffs also allege that Paul Minnich stated that the adult oriented facility would adversely impact the bank's branch office operation.

On May 1, 2013, at another Chanceford Township Planning Commission meeting, Defendant, through its agent Paul Minnich, presented testimony and dissenting opinion based on morality-based arguments against Plaintiffs' application for special exemption. On May 2, 2013, Defendant filed confessed judgments against Plaintiffs Terry and Brenda Sutton in the amount of $79,415.03 and against Plaintiffs Cinkaj and Brogue Limited Partnership in the amount of $1,024,749.06.

On May 13, 2013, the Chanceford Township Planning Commission recommended that the Chanceford Township Zoning Hearing Board reject Plaintiff[s'] application.

On May 24, 2013, Plaintiffs filed a Petition to Strike Confessed Judgment in the Court of Common Pleas of York County, Pennsylvania.

On May 23, 2013, the Chanceford Township Zoning Hearing Board meeting took place. During the meeting, Plaintiffs allege that Defendant's agent, Paul Minnich, asked that the application for a special exemption be denied because Plaintiffs proposed adult-oriented facility was "immoral," "criminal," "outside the character and nature . . . in the neighborhood," and "not appropriate for the community."

- 3 -

On June 17, 2013, Plaintiff Sutton,[3] with counsel, appeared before the Chanceford Township Zoning Hearing Board meeting and argued that the denial of Plaintiffs' application for special exception would be a violation of their rights protected by the Constitution of the United States. At this meeting, Plaintiff alleges that Paul Minnich stated that Plaintiff Sutton "won't even tell [sic] us who these people are . . . It goes directly to the heart of this gentleman's (Sutton) credibility or lack thereof." (*See* Plaintiffs' Second Amended Complaint ¶ 86). Plaintiffs also allege that Paul Minnich informed the Zoning Hearing Board that Plaintiffs were in default on their loan obligations to Defendant and have been sued for a million dollars.

On July 22, 2013[,] and July 25, 2013, during two meetings of the Chanceford Township Zoning Hearing Board, Plaintiffs allege that Defendant, through Paul Minnich, argued that the Plaintiffs' application should be denied. Plaintiffs allege that Paul Minnich made numerous arguments for the denial of Plaintiffs' application. At the conclusion of the July 25, 2013 meeting, Chanceford Township Zoning Hearing Board members voted to unanimously reject Plaintiffs' Application for Special Exception. Plaintiffs allege that the board members informed the audience that they had denied the application based on arguments made by Paul Minnich, who Plaintiffs allege is the Defendant's agent and special legal counsel. On August 15, 2013, the Chanceford Township Zoning Hearing Board issued a written decision that memorialized the denial.[4]

On or about August 15, 2013, Plaintiffs allege that because of the denial of Plaintiffs' application, Jeff Levy decided not to purchase "the Office" space at the Property. On or about August 31, 2013, Plaintiffs allege that because of the denial of Plaintiffs' application, Terry Thompson announced that he purchased a

---

[3] Our review of the record reveals that the trial court was referring to Appellant **Terry** Sutton.

[4] The Bank points out that while Appellants' claims center on the denial of zoning relief, the Reproduced Record does not include the Zoning Board's August 15, 2013 decision. The Bank's Brief at 3 n.3. We note that the Second Amended Complaint, as well, merely attaches newspaper articles regarding the denial as evidence of its occurrence. Second Amended Complaint, 2/5/16, at Exhibits 27 and 28.

location in Atlantic City, New Jersey[,] instead of the location at the Property. The Property was eventually foreclosed on and sold at a Sheriffs sale on April 10, 2014.

On March 10, 2015, Plaintiffs filed their complaint in a civil action initially naming as Defendants Peoples Bank, Larry J. Miller, Kent Ketterman, Harry Swift, Susan Holtzinger, Scott Weaver, Brittany Crispens, and Paul Minnich. The initial complaint alleged intentional interference with existing contractual relations, intentional interference with prospective contractual relations, defamation of character, slander, breach of the implied covenant of good faith and fair dealing, and false light invasion of privacy. On March 30, 2015, the Peoples Bank Defendants, except for Defendant Paul Minnich, filed preliminary objections to Plaintiff[s'] Complaint. On April 6, 2015, Defendant Paul Minnich filed preliminary objections to Plaintiff[s'] Complaint. On June 10, 2015, the Honorable Judge Stephen P. Linebaugh sustained the Defendants' preliminary objections and dismissed all of Plaintiffs' counts, without prejudice. On June 17, 2015, the parties filed a Discontinuance of Action as to Defendant Paul Minnich.

On June 26, 2015, Plaintiffs filed their First Amended Complaint and alleged counts of intentional interference with existing contractual relations and intentional interference with prospective contractual relations against Defendants Peoples Bank, Larry Miller, Kent Ketterman, Scott Weaver, Harry Swift, Susan Holtzinger, and Brittney Crispens. On July 16, 2015, Defendants filed preliminary objections to Plaintiffs' Amended Complaint. On December 18, 2015, the Honorable Judge Stephen P. Linebaugh heard oral argument on Defendants' preliminary objections. On January 6, 2016, Judge Linebaugh granted, in part, and denied, in part, Defendants' preliminary objections. The order dismissed, with prejudice, the actions filed against Larry Miller, Kent Ketterman, Harry Swift, Susan Holtzinger, Scott Weaver, and Brittney Crispens. The case was allowed to continue against Defendant Peoples Bank.

On February 5, 2016, Plaintiffs filed their Second Amended Complaint, which again alleges only "intentional interference with existing contractual relations and intentional interference with prospective contractual relations." On March 11, 2016, Defendant Peoples Bank filed an answer with new matter to the complaint. On April 21, 2016, Plaintiffs filed a reply to Defendant's new matter. On December 15, 2017, Defendant filed a motion and

memorandum of law in support of summary judgment. On February 9, 2018, Plaintiffs filed a response and brief in opposition to Defendant's motion for summary judgment.

Opinion and Order Granting Defendant's Motion for Summary Judgment, 4/3/18, at 2–8.

The trial court granted the Bank's motion for summary judgment on April 3, 2018. Appellants filed a notice of appeal on April 13, 2018. Both Appellants and the trial court complied with Pa.R.A.P. 1925.[5]

Appellants frame the same six issues asserted in their Rule 1925(b) statement in the Statement of Questions Involved in their appellate brief:

1. Did the Court err and abuse its discretion by determining that the record is void of sufficient evidence that demonstrates a genuine issue for trial that statements and allegations made by [the Bank] during zoning board hearings went beyond the scope of fair argument and opposition?

2. Did the Court err and abuse[] its discretion by determining that the record is void of sufficient evidence that demonstrates a genuine issue for trial that [the Bank] did more than exercise its opinion in opposition to [Appellants'] zoning request?

3. Did the Court err and abuse its discretion by determining that the record is void of sufficient evidence that demonstrates a genuine issue for trial that [the Bank's] interference was not proper under Reinstatement (Second) of Torts § 767?

4. Did the Court err and abuse its discretion in determining that the record is void of sufficient evidence that

_____

[5] The trial court relied upon its reasoning in the April 3, 2018 order granting summary judgment in lieu of further explanation in a Pa.R.A.P. 1925(a) opinion.

demonstrates a genuine issue for trial that [the Bank's] interference was not without privilege or justification under Reinstatement (Second) of Torts § 768?

5. Did the Court err and abuse its discretion, as well as deny [Appellants'] due process by failing to credit sufficient evidence that contradicted its key actual conclusion that [the Bank's] conduct was proper, privileged and justified by improperly weighing the sufficient evidence and resolving disputed issues in favor of the moving party, a clear misapplication of Pennsylvania Rule of Civil Procedure 1035.2?

6. Did the Court err and abuse its discretion by failing to address and offer its opinion on other issues advanced by [the Bank] to support its request for Summary Judgment and disputed by [Appellants]?

Appellants' Brief at 4–5.

Our standard of review is settled:

It is well settled that "summary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." **Truax v. Roulhac**, 126 A.3d 991, 996 (Pa. Super. 2015) (*en banc*) (quoting **Summers v. Certainteed Corp.**, 606 Pa. 294, 997 A.2d 1152, 1159 (2010)). In ruling on such a motion, "the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party" and "resolve all doubts as to the existence of a genuine issue of material fact against the moving party." **Id.** "Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment." **Babb v. Ctr. Cmty. Hosp.**, 47 A.3d 1214, 1223 (Pa. Super. 2012) (citations omitted). "Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law." **Id**. Thus, "a proper grant of summary judgment depends upon an evidentiary record that either (1) shows the material facts are undisputed or (2) contains insufficient facts to make out a prima facie cause of action or defense." **Basile v. H & R Block, Inc.**, 777 A.2d 95,

100 (Pa. Super. 2001) (quoting **McCarthy v. Dan Lepore & Sons Co., Inc**., 724 A.2d 938, 940 (Pa. Super. 1998)).

**Dunlap v. Fed. Signal Corp.**, 194 A.3d 1067, 1069 (Pa. Super. 2018) (footnote omitted). On appeal, this Court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. **Summers**, 997 A.2d at 1159. "But the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo*." **Truax**, 126 A.3d at 996. "To the extent that this Court must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record." **Wells Fargo Bank v. Joseph**, 183 A.3d 1009, 1012 (Pa. Super. 2018).

All of Appellants' issues assert that the trial court failed to credit their evidence contradicting the trial court's "key actual conclusion that [the Bank's] conduct was proper, privileged, and justified by improperly weighing the sufficient evidence and resolving disputed issues in favor of" the Bank. Appellants' Brief at 12. We disagree.

We note initially that Appellants' brief does not comply with our rules of appellate procedure. Specifically, as noted *supra*, Appellants list six issues in their Statement of Questions Involved, which they identify as issues one through six. Appellants' Brief at 4–5. However, in their brief, Appellants provide argument for only two issues, labeled A and B, which refer to the topics suggested by issues three and five, with a subpart that tracks language

of issue one. Clearly, Appellants' brief violates Pa.R.A.P. 2119, which mandates that "[t]he argument shall be divided into as many parts as there are questions to be argued . . . ." Pa.R.A.P. 2119(a). The reason for the rule is readily apparent, and compliance with the rule aids this Court in identifying and addressing Appellants' claims. Indeed, this Court will not consider an argument that has been abandoned. *See Koller Concrete, Inc. v. Tube City IMS, LLC*, 115 A.3d 312, 320 321 (Pa. Super. 2015) (Superior Court will not address issue presented in the statement of questions involved where no corresponding analysis is included in the brief); *Lechowicz v. Moser*, 164 A.3d 1271, 1276 (Pa. Super. 2017) (Superior Court will not consider argument that is not properly developed). Thus, issues two, four, and six, which have been abandoned in the brief, are waived and will not be addressed.[6]

In issue A, subpart one, in the argument section of Appellants' brief, Appellants maintain that the trial court abused its discretion by determining that the record lacks sufficient evidence demonstrating a genuine issue that the Bank's "interference was not proper under Reinstatement (Second) of Torts §767." Appellants' Brief at 12. In subpart two, Appellants maintain that the trial court did not consider Appellants' evidence in concluding that the Bank's statements to the Zoning Board "went beyond the scope of fair argument and opposition." *Id.* at 21. Finally, Appellants contend the trial

---

[6] To the extent the abandoned issues were addressed by the trial court, we would rely on its disposition and explanation.

court abused its discretion in disregarding Appellants' "additional arguments."

*Id.* at 34. In conjunction, Appellants suggest the trial court failed to credit contradicting evidence to its determination that the Bank's conduct was proper and justified, thereby misapplying Pa.R.C.P. 1035.2 *Id.*[7]

---

[7] We note that there was a discrepancy between the parties concerning Appellants' actions regarding the Zoning Board's decision. *See* Bank's Application for Relief in the Nature of a Motion to Correct the Record, filed 10/18/18. After their application was denied by the Zoning Board, Appellants forewent an appeal in state court and instead, filed the instant complaint against the Bank and others on March 10, 2015, and a federal complaint on August 12, 2014, against Chanceford Township and others challenging the zoning ordinance regarding adult-oriented businesses. Appellants claimed their application for a special exception was denied due to moral objections to adult entertainment, and that the ordinance and the denial of their application violated the First Amendment to the United States Constitution. *Sutton v. Chanceford Twp.*, 186 F.Supp.3d 342, 345 (M.D. Pa. 2016) ("*Sutton I*"). Appellants sought "monetary damages, a declaration that the zoning ordinance was unconstitutional, and an injunction against the ordinance's future enforcement." *Id.* at 345–346. Ultimately, the federal district court granted the township's summary-judgment motion, stating:

> [A]lthough the plaintiffs are plainly aggrieved by the denial of their application, we do not find sufficient evidence to show that this denial was so arbitrary or improper that it shocks the conscience. Instead, it appears to be little more than a local land-use decision pitting a frustrated business against the [Zoning Board] and other local officials who had legitimate, objective, and content-neutral reasons for their adverse decision.

*Sutton II*, 298 F.Supp.3d at 810.

In its brief to this Court, the Bank asserted that *Sutton II*, because it was an unappealed decision, put to rest any attempt by Appellants to persuade us of the veracity of their position in the instant case. In actuality, however, Appellants **did** appeal the district court's decision to the Third Circuit Court of Appeals on April 18, 2018. *Sutton v. Chanceford Twp.*, Case Number 18-1846 (3d Cir. 2018). Nevertheless, our decision today is based solely on the

We have considered Appellants' arguments, the Bank's responses, reviewed the applicable law, and carefully examined the record certified to us on appeal. We conclude that the April 3, 2018 Order granting summary judgment, as relied upon in the June 7, 2018 statement pursuant to Pa.R.A.P. 1925(a) in lieu of an opinion by the Honorable Richard K. Renn, sufficiently addresses the issues raised on appeal, and we rely upon it in affirming this case. The parties are directed to attach the April 3, 2018 Order in the event of future proceedings.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/9/2019

---

propriety of the trial court's decision in the case *sub judice* and not in reliance upon the federal lawsuit by Appellants against Chanceford Township.

OFFICE OF PROTHONOTARY

2018 APR -3 PM 2:58

JUDICIAL CENTER
YORK, PA

## IN THE COURT OF COMMON PLEAS YORK COUNTY PENNSYLVANIA

| | | |
|---|---|---|
| TERRY SUTTON, BRENDA L. SUTTON and CHRIS CINKAJ | : | No. 2015-SU-000735-67 |
| *Plaintiffs* | : | |
| | : | CIVIL DIVISION |
| v. | : | |
| | : | |
| PEOPLES BANK | : | |
| *Defendant* | : | |

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**AND NOW**, this 3rd day of April, 2018, the Court has before it Defendant

Peoples Bank's motion for summary judgment pursuant to Pennsylvania Rule of

Civil Procedure 1035.2. We GRANT Defendant's motion for summary judgment

because Plaintiffs have failed to raise a genuine issue of material fact that

Defendant's conduct of speaking against Plaintiffs' Application for special

exception at the Chanceford Township Zoning Hearing Board meetings was

improper and without privilege or justification.

Plaintiffs' claims are dismissed, with prejudice.

1

A-1

*Factual and Procedural History*

Plaintiff Terry L. Sutton is a person who does business under the trade name "Cinkaj Brogue Partnership" and resides in York County, Pennsylvania. Plaintiff Brenda L. Sutton is also a person who does business under the trade name "Cinkaj Brogue Limited Partnership" and resides in York, County, Pennsylvania. Plaintiffs Terry and Brenda Sutton are also husband and wife. Plaintiff Chris Cinkaj is a person who does business under the trade name "Cinkaj Brogue Partnership" and resides in Langhorne, Pennsylvania. Plaintiff Brogue Limited Partnership is a Pennsylvania limited partnership located in York, Pennsylvania. Defendant Peoples Bank, Codorus Valley Bancorp, Inc. is a one-bank holding company headquartered in York, Pennsylvania.

Plaintiffs are part owners of the Brogue Center (hereinafter the "Property"), located at 2514 Delta Road, Chanceford Township, York County, Brogue, PA. The Property consists of a shopping center in which a number of tenants were under lease. Defendant operated a branch office in Suite #8 in the Property and had a signed lease with Plaintiffs. On February 13, 2006, Plaintiff Cinkaj executed an open end mortgage line of credit from Defendant in the sum of one million dollars and Plaintiffs Terry and Brenda Sutton borrowed from Defendant the sum of $150,000 from a line of credit for commercial purposes. Plaintiff Cinkaj had

2

unlimited unrestricted access to the first $500,000 of the open ended mortgage line of credit and the second $500,000 was restricted to a prior notice from Plaintiff Cinkaj to Defendant and consent of Defendant bank.

On or about June 15, 2010, Plaintiff Cinkaj withdrew $500,000 from his line of credit from Defendant to finance future construction projects. On August 30, 2011, Kent Ketterman, Senior Vice President of Defendant, sent an email to Plaintiff Cinkaj stating that he had withdrawn money from his restricted $500,000 line of credit without Defendant's consent. On November 1, 2011, Kent Ketterman sent correspondence to Plaintiff Cinkaj stating that Defendant put his line of credit in default and that the line of credit must be paid to a maximum balance of $500,000 by June 5, 2012. Plaintiffs Terry and Brenda Sutton's line of credit would remain frozen until additional collateral could be provided or when the line was paid back to the required level.

On or about February 1, 2012, Plaintiffs began to research the possibility of opening an adult entertainment business at their Property. On that same date, Plaintiffs allege that they entered into oral negotiations with Jeff Levy, representing Spearmint Rhino Entertainment, to purchase a space at the Property known as "The Office" to run an adult entertainment business. On March 5, 2013,

3

Plaintiffs alleged that they entered into a lease with Terry Thompson to open "the Office", an adult entertainment business, in a vacant space at their Property.

On March 12, 2013, Plaintiffs submitted an Application for Special Exception to the Chanceford Township Zoning Hearing Board seeking to make use of their Property as an Adult Oriented Facility. Plaintiffs allege that the application met all of the criteria of the Ordinance as set forth in order for Chanceford Township Zoning Hearing Board members to approve the application for special exception.

On April 16, 2013, the Chanceford Township Planning Commission held a meeting. During this meeting, Plaintiffs allege that Defendant's agent, Paul Minnich, stated during the public comment period that Plaintiffs failed to meet the condition of harmony with orderly and appropriate development of the zone. Plaintiffs also allege that Paul Minnich stated that the adult oriented facility would adversely impact the bank's branch office operation.

On May 1, 2013, at another Chanceford Township Planning Commission meeting, Defendant, through its agent Paul Minnich, presented testimony and dissenting opinion based on morality-based arguments against Plaintiffs' application for special exemption. On May 2, 2013, Defendant filed confessed judgments against Plaintiffs Terry and Brenda Sutton in the amount of $79,415.03

4

A-4

and against Plaintiffs Cinkaj and Brogue Limited Partnership in the amount of $1,024,749.06.

On May 13, 2013, the Chanceford Township Planning Commission recommended that the Chanceford Township Zoning Hearing Board reject Plaintiff's application.

On May 24, 2013, Plaintiffs filed a Petition to Strike Confessed Judgment in the Court of Common Pleas of York County, Pennsylvania.

On May 23, 2013, the Chanceford Township Zoning Hearing Board meeting took place. During the meeting, Plaintiffs allege that Defendant's agent, Paul Minnich, asked that the application for a special exemption be denied because Plaintiff's proposed adult-oriented facility was "immoral", "criminal", "outside the character and nature . . . in the neighborhood", and "not appropriate for the community."

On June 17, 2013, Plaintiff Sutton, with counsel, appeared before the Chanceford Township Zoning Hearing Board meeting and argued that the denial of Plaintiffs' application for special exception would be a violation of their rights protected by the Constitution of the United States. At this meeting, Plaintiff alleges that Paul Minnich stated that Plaintiff Sutton "won't even [tell] [sic] us who these people are . . . It goes directly to the heart of this gentleman's [Sutton]

5

credibility or lack thereof." (See Plaintiffs' Second Amended Complaint ¶ 86).

Plaintiffs also allege that Paul Minnich informed the Zoning Hearing Board that Plaintiffs were in default on their loan obligations to Defendant and have been sued for a million dollars.

On July 22, 2013 and July 25, 2013, during two meetings of the Chanceford Township Zoning Hearing Board, Plaintiffs allege that Defendant, through Paul Minnich, argued that the Plaintiffs' application should be denied. Plaintiffs allege that Paul Minnich made numerous arguments for the denial of Plaintiffs' application. At the conclusion of the July 25, 2013 meeting, Chanceford Township Zoning Hearing Board members voted to unanimously reject Plaintiffs' Application for Special Exception. Plaintiffs allege that the board members informed the audience that they had denied the application based on arguments made by Paul Minnich, who Plaintiffs allege is the Defendant's agent and special legal counsel. On August 15, 2013, the Chanceford Township Zoning Hearing Board issued a written decision that memorialized the denial.

On or about August 15, 2013, Plaintiffs allege that because of the denial of Plaintiffs' application, Jeff Levy decided not to purchase "the Office" space at the Property. On or about August 31, 2013, Plaintiffs allege that because of the denial of Plaintiffs' application, Terry Thompson announced that he purchased a location

6

A-6

in Atlantic City, New Jersey instead of the location at the Property. The Property was eventually foreclosed on and sold at a Sheriff's sale on April 10, 2014.

On March 10, 2015, Plaintiffs filed their complaint in a civil action initially naming as Defendants Peoples Bank, Larry J. Miller, Kent Ketterman, Harry Swift, Susan Holtzinger, Scott Weaver, Brittany Crispens, and Paul Minnich. The initial complaint alleged intentional interference with existing contractual relations, intentional interference with prospective contractual relations, defamation of character, slander, breach of the implied covenant of good faith and fair dealing, and false light invasion of privacy. On March 30, 2015, the Peoples Bank Defendants, except for Defendant Paul Minnich, filed preliminary objections to Plaintiff's Complaint. On April 6, 2015, Defendant Paul Minnich filed preliminary objections to Plaintiff's Complaint. On June 10, 2015, the Honorable Judge Stephen P. Linebaugh sustained the Defendants' preliminary objections and dismissed all of Plaintiffs' counts, without prejudice. On June 17, 2015, the parties filed a Discontinuance of Action as to Defendant Paul Minnich.

On June 26, 2015, Plaintiffs filed their First Amended Complaint and alleged counts of intentional interference with existing contractual relations and intentional interference with prospective contractual relations against Defendants Peoples Bank, Larry Miller, Kent Ketterman, Scott Weaver, Harry Swift, Susan

7

Holtzinger, and Brittney Crispens. On July 16, 2015, Defendants filed preliminary objections to Plaintiffs' Amended Complaint. On December 18, 2015, the Honorable Judge Stephen P. Linebaugh heard oral argument on Defendants' preliminary objections. On January 6, 2016, Judge Linebaugh granted, in part, and denied, in part, Defendants' preliminary objections. The order dismissed, with prejudice, the actions filed against Larry Miller, Kent Ketterman, Harry Swift, Susan Holtzinger, Scott Weaver, and Brittney Crispens. The case was allowed to continue against Defendant Peoples Bank.

On February 5, 2016, Plaintiffs filed their Second Amended Complaint, which again alleges only "intentional interference with existing contractual relations and intentional interference with prospective contractual relations." On March 11, 2016, Defendant Peoples Bank filed an answer with new matter to the complaint. On April 21, 2016, Plaintiffs filed a reply to Defendant's new matter. On December 15, 2017, Defendant filed a motion and memorandum of law in support of summary judgment. On February 9, 2018, Plaintiffs filed a response and brief in opposition to Defendant's motion for summary judgment.

8

A-8

*Discussion*

"Pursuant to Pa.R.C.P. 1035.2(2), a trial court shall enter judgment if, after the completion of discovery, an adverse party who will bear the burden of proof at trial fails to produce 'evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to the jury." *Phillips v. Selig*, 959 A.2d 420, 427 (Pa. Super. 2008); citing *Rapagnani v. Judas Co.*, 736 A.2d 666, 668-69 (Pa. Super. 1999). "A motion for summary judgment is based on an evidentiary record that entitles the moving party to a judgment as a matter of law." *Id.*; citing *Swords v. Harleysville Ins. Cos.*, 883 A.2d 562, 566-67 (Pa. Super. 2005).

"In considering the merits of a motion for summary judgment, a court views the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *Id.*; citing *Hayward v. Medical Center of Beaver County*, 608 A.2d 1040, 1042 (Pa. Super. 1992). "The party with the burden of proof on an issue may not rely merely on the allegations in its pleadings, but rather must produce evidence of facts demonstrating a genuine issue for trial." *Id.*; *Fennell v. Nationwide Mut. Fire Ins. Co.*, 603 A.2d 1064, 1067 (Pa. Super. 1992).

9

A-9

In its motion for summary judgment, Defendant raises numerous reasons for why Plaintiffs have failed to meet their burden of proof, including: (1) Plaintiffs failed to demonstrate they have a contractual interest in the Office Lease; (2) the non-binding letter is not sufficiently concrete to create liability; and (3) Defendant's actions were with privilege and/or justification. Plaintiffs have responded to all of these arguments in their brief in opposition to summary judgment and argue that there are genuine issues of material fact present in this case and Defendant is not entitled to judgment as a matter of law. For the reasons stated below, even viewing the record in a light most favorable to the Plaintiffs, we find Plaintiffs have failed to produce facts essential to demonstrate that Defendant's conduct was improper and without justification or privilege. Therefore, Defendant is entitled to judgment as a matter of law.

*A. Plaintiffs have not demonstrated that Defendant's conduct was improper and without justification or privilege.*

Plaintiffs' allegations for intentional interference with existing contractual relations and intentional interference with prospective contractual relations are alleged to have occurred based on the same conduct of the Defendant. Plaintiffs allege that they had an existing contract with Terry Thompson and a prospective

10

contract with Jeff Levy to purchase and operate at the "Office" location at Plaintiffs' Property an adult oriented business.

Plaintiffs allege that Defendant was aware of these contracts, did not support Plaintiffs' plans, and intended to disrupt the performance of the contracts between Plaintiffs, Jeff Levy, and Terry Thompson by sending its agent, Paul Minnich, to the Chanceford Township Zoning Hearing Board meetings and speaking against Plaintiffs Application for Special Exemption to open the adult oriented facility. The Zoning Board denied Plaintiffs' application for a special exemption and Plaintiffs allege that it was Defendant's conduct without privilege or justification that resulted in the Zoning Board denying the application. As a result, Plaintiffs sustained money damage when Jeff Levy and Terry Thompson terminated their agreements to open the adult oriented facility at Plaintiffs' Property. Furthermore, Plaintiffs allege that Defendant's actions resulted in Plaintiffs losing their property and future earnings to foreclosure.

The tort of "interference with existing contractual relations" requires that a Plaintiff demonstrate "an intent on the part of the defendant to harm the plaintiff by interfering with [an existing] contractual relationship [and] the absence of a privilege or justification on the part of the defendant. Restatement (Second) of Torts § 766 (1979); *Small v. Juniata College*, 689 A.2d 235 (Pa. 1997).

11

A-11

"Interference with prospective contractual relations" requires that a Plaintiff demonstrate "the purpose or intent [by the Defendant] to harm the Plaintiff by preventing the [prospective] relation from occurring [and] the absence of a privilege or justification on the part of the Defendant." Restatement (Second) of Torts § 766B (1979); *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 471 (Pa. 1979).

The Restatement (Second) of Torts Section 767 provides the following analysis in determining whether an actor's conduct is "improper":

> In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors:
>
> (a) the nature of the actor's conduct,
> (b) the actor's motive,
> (c) the interests of the other with which the actor's conduct interferes,
> (d) the interests sought to be advanced by the actor,
> (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
> (f) the proximity or remoteness of the actor's conduct to the interference and
> (g) the relations between the parties.

*Id.*

In addition, Restatement (Second) of Torts Section 767, Comment (b) states:

> The issue in each case is whether the interference is improper or not under the circumstances; whether, upon a consideration of the relative significance of the factors involved, the conduct should be permitted

12

without liability, despite its effect of harm to another. The decision therefore depends upon a judgment and choice of values in each situation. This Section states the important factors to be weighed against each other and balance in arriving at a judgment; but it does not exhaust the list of possible factors.

Since the determination of whether an interference is improper is under the particular circumstances, it is an evaluation of these factors for the precise facts of the case before the court; and, as in the determination of whether conduct is negligent, it is usually not controlling in another factual situation. On the other hand, factual patterns develop and judicial decisions regarding them also develop patterns for holdings that begin to evolve crystallized privileges or rules defining conduct that is not improper. The rules stated in §§ 768-774 shows the results of the balancing process in some specific situations that have been the subject of judicial decision; but they do not constitute an exhaustive list of situations in which it has been determined that an intentional interference with contractual relations is not improper.

*Id.*

As stated under the Restatement, the analysis of whether the conduct of a party is improper is heavily dependent upon the circumstances of each individual case. It is our duty to look at the factors, look at the conduct, and determine whether this conduct should be permitted without liability despite harm that can occur to another party.

I. *Relations Between the Parties:*

Initially, we observe that the relations between the parties would be a factor that could weigh in favor of the Plaintiffs. Defendant rented Suite #8 at the

13

Plaintiffs' property. Plaintiffs' lines of credit were in default and Defendant had filed confessed judgments against Plaintiffs to recover these amounts. It is fair to say that the relations between the parties were strained during the conduct alleged by Plaintiffs in their complaint. We must admit, though, that we fail to see how it would be in the bank's economic interests to "interfere" in a potential business deal which might lead to the bank being repaid what it was apparently owed.

Be that as it may, we find that some of the other factors weigh heavily against the Plaintiffs and in favor of the Defendant and guide our decision to grant summary judgment in favor of the Defendant because Plaintiffs have not demonstrated that Defendant's conduct was improper.

II.    *Social Interests In Protecting Defendant's Action / Motive:*

Restatement (Second) of Torts §767 Comment g. discusses the social interests factor in determining whether a party's conduct is improper, stating:

> Appraisal of the private interests of the persons involved may lead to a stalemate unless the appraisal is enlightened by a consideration of the social utility of these interests . . . The social interest in this enterprise may frequently require the sacrifice of the claims of the individuals to the freedom from interference with their pursuit of gain. Thus, it is thought that the social interest in competition would be unduly prejudiced if one were to be prohibited from in any manner persuading a competitor's prospective customers not to deal with him. On the other hand, both social and private interests concur in the determination that persuasion only by suitable means

14

> is permissible, that predatory means like violence and fraud are neither necessary nor desirable incidents of competition. (See further § 768).

*Id.*

We find that this factor heavily influences our decision to grant the Defendant's motion for summary judgment. Plaintiffs' causes of action essentially allege that Defendant interfered with Plaintiffs' existing and prospective contracts with Jeff Levy and Terry Thompson by sending Paul Minnich to the Chanceford Township Zoning Hearing Board meetings and speaking out against Plaintiffs' application for a special exception to put an adult oriented facility at the Brogue Center.

In this case, however, Defendant is not alleged to have gone to a party to any contract, prospective or otherwise, and urged that party not to enter into the arrangement. Instead, Defendant went to an independent body charged with making an independent decision on the merits of a zoning application, and in a public forum, spoke against that application, which it had a right to do. (See discussion below.) If we were to hold that such conduct was improper, it would unduly prejudice the social interest of anyone to freely speak and voice one's opinion on zoning issues at a publicly advertised and public zoning hearing board meeting. Plaintiffs have failed to demonstrate to this Court that Defendant's actions were impermissible and improper when analyzed in the context of

15

expressing one's opinion at a zoning hearing board meeting. The fact that the zoning decision would impact the contractual relations of Plaintiffs is unfortunate for them, but if Plaintiffs believe that the zoning decision was arbitrary, capricious, or otherwise contrary to law, their remedy is to appeal the decision, not sue members of the public who attend and comment.

Regarding Defendant bank's motive, Defendant rented space at Plaintiffs' Property and advanced legitimate reasons for opposing the opening of an adult oriented facility near its business. The record is void of any statements or allegations made by the Defendant during the meetings that would be seen as fraudulent, threatening, or going beyond the scope of fair argument and opposition to a zoning request. Defendant had a right to protect its business interests at a zoning meeting which could affect the character of the surroundings of its business location. *Cloverleaf Development v. Horizon Financial, F.A.*, 500 A.2d 163 (Pa.Super. 1985). Defendant was free to voice its opinion at the zoning hearing board meeting regarding Plaintiffs' application just as any other citizen or business would, and the record does not show any evidence that it did more than exercise its opinion in that forum.

16

### III.   The Nature of Defendant's Conduct

Restatement (Second) of Torts §767 Comment c. discusses the nature of the

actor's conduct factor in determining whether a party's conduct is improper,

stating in part:

> The nature of the actor's conduct is a chief factor in determining whether
> the conduct is improper or not, despite its harm to the other person . . .
> Some of them, like fraud and physical violence, are tortious to the person
> immediately affected by them; others, like persuasion and offers of benefits,
> are not tortious to him. Under the same circumstances interference by some
> means is not improper while interference by other means is improper; and,
> likewise, the same means may be permissible under some circumstances
> while wrongful in others. The issue is not simply whether the actor is
> justified in causing the harm, but rather whether he is justified in causing it
> in the manner in which he does cause it . . .

*Id.*

We find nothing in the record that would demonstrate to this Court that

Defendant's appearance at, statements or conduct during any of the Chanceford

Township Zoning Hearing Board meetings was improper.  Defendant opposed

Plaintiffs' plans to open an adult oriented facility by arguing that the facility would

not be in harmony with the surrounding area, which they, along with any member

of the public with standing, had a right to do.

Plaintiffs argue that Defendant violated a fiduciary relationship with

Plaintiffs by appearing at the meetings.  We find, however, that no such

17

relationship exists in the context of this case under Pennsylvania Law. *Federal land Bank of Baltimore v. Fetner*, 410 A.2d 344 (Pa.Super. 1979).

Defendant rented space at Plaintiffs' property and had a legitimate interest in arguing against opening an adult oriented facility near the vicinity of its property. There is nothing in the record to demonstrate that Defendant attempted to bribe, threaten, or present fraudulent information before the Zoning Hearing Board. We find Plaintiffs have failed to demonstrate that under the facts of the present case, the nature of the Defendant's conduct was improper.

*Conclusion*

Given our holding above, we find it unnecessary to discuss the other reasons advanced by Defendant Bank to support its request for summary judgment.

Motion for summary judgment is GRANTED.

Copies of this Order shall be sent to Peter J. Daley, II, Esq., counsel for Plaintiffs and to Mark D. Bradshaw, Esq., counsel for Defendant.

BY THE COURT:

Richard K. Renn, Judge

18

A-18